Raymond C. Givens
Givens Law Firm
P.O. Box 400
912 East Sherman Avenue
Cocur d'Alene, Idaho 83816
Telephone: 208-676-1310
Fax: 208-676-1296



FILED

JUN 3 0 2006

U.S. COURT OF
FEDERAL CLAIMS

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **WALLACE OENGA, GEORGENE**<br>**SHUGLUK, LEROY OENGA, SR.,**<br>**MICHAEL DELIA, TONY DELIA,**<br>**JOSEPH DELIA, JENNIE MILLER,**<br>**and TRINITY DELIA,** | )<br>)<br>)<br>)<br>) |
| **Plaintiffs,** | )<br>) No. 06 – 491 L |
| **v.** | )<br>) |
| **THE UNITED STATES,** | ) **COMPLAINT** |
| **Defendant.** | )<br>) |

### I.    PRELIMINARY STATEMENT

1.    This is an action for damages and related relief against the United States

filed by the Plaintiffs who are Native Alaskan Inupiat heirs of Andrew Oenga (deceased)

regarding the lease of allotted lands Allotment F-14632 Parcel B, BIA Lease F-89-01 as

amended. The claim is primarily for breach of trust by the United States regarding its

failure to collect proper rents or royalties due on the lease of the Allotment. Damages

against the United States sought in this case are authorized by money mandating statutory

and regulatory schemes relating to leases of allotted lands and oil/gas production utilizing

allotted lands. Claim Three also seeks relief regarding a recently discovered breach of

trust regarding trust asset management. Interested Party, BP Exploration (Alaska) Inc.

(BP) or other Interested Parties may well be liable to the United States for some or all of the damages sought from the United States by Plaintiffs.

## II.    JURISDICTION

2.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1491(a) over this breach of trust action not sounding in tort.

3.      On November 22, 2005 Plaintiffs formally requested an accounting regarding the lease that is the subject of this action. On February 8, 2006, May 12, 2006 and May 26, 2006 the Defendants responded to that accounting.

4.      The six year statute of limitations of 28 U.S.C. § 2501 applicable to this action was tolled by operation of PL 109-54 (2005), 119 Stat. 499, 519 and the request for accounting. The statute of limitations began to run on May 26, 2006, the date of the Defendants' final response to that accounting.

5.      The West Niakuk Claim did not accrue within the meaning of 28 U.S.C. § 2501 until at least 2003 when Plaintiffs first discovered that the United States had concealed from Plaintiffs actions it had taken and knowledge in its possession regarding the West Niakuk subsurface state oil leases, events relating to those state leases and production of oil and gas from West Niakuk through the facility on Allotment F-14632 Parcel B.

6.      Plaintiffs, the United States and BP entered into a Tolling Agreement on December 20, 2005 covering the period "December 20, 2005 and June 30, 2006 inclusive."

### III.   PARTIES

7       Plaintiffs are:

   a.   Plaintiff, Wallace Oenga is Inupiat, a son of Andrew Oenga (deceased),
        resides in Atquasuk, Alaska and holds a 24% share of Andrew Oenga's
        Heald Point Allotment F-14632 Parcel B and thus the right to 24% of any
        proceeds from the Heald Point allotment.

   b.   Plaintiff, Georgene Shugluk is Inupiat, a daughter of Andrew Oenga
        (deceased), resides in Barrow, Alaska and holds a 24% share of Andrew
        Oenga's Heald Point Allotment F-14632 Parcel B and thus the right to
        24% of any proceeds from the Heald Point allotment.

   c.   Plaintiff, Leroy Oenga, Sr. is Inupiat, a grandson of Andrew Oenga
        (deceased), resides in Barrow, Alaska and holds a 24% share of Andrew
        Oenga's Heald Point Allotment F-14632 Parcel B and thus the right to
        24% of any proceeds from the Heald Point allotment.

   d.   Plaintiff, Michael Delia is Inupiat, a grandson of Andrew Oenga
        (deceased), resides in Anchorage, Alaska and holds a 24% share of
        Andrew Oenga's Heald Point Allotment F-14632 Parcel B and thus the
        right to 24% of any proceeds from the Heald Point allotment.

   e.   Plaintiff, Tony Delia is Inupiat, a grandson of Andrew Oenga (deceased),
        resides in Anchorage, Alaska and holds a 1% share of Andrew Oenga's
        Heald Point Allotment F-14632 Parcel B and thus the right to 1% of any
        proceeds from the Heald Point allotment.

  f. Plaintiff, Joseph Delia is Inupiat, a grandson of Andrew Oenga (deceased), resides in Anchorage, Alaska and holds a 1% share of Andrew Oenga's Heald Point Allotment F-14632 Parcel B and thus the right to 1% of any proceeds from the Heald Point allotment.

  g. Plaintiff, Jennie Miller is Inupiat, a granddaughter of Andrew Oenga (deceased), resides in Fairbanks, Alaska and holds a 1% share of Andrew Oenga's Heald Point Allotment F-14632 Parcel B and thus the right to 1% of any proceeds from the Heald Point allotment.

  h. Plaintiff, Trinity Delia is Inupiat, a great-granddaughter of Andrew Oenga (deceased), resides in Anchorage, Alaska and holds a potential 1% share of Andrew Oenga's Heald Point Allotment F-14632 Parcel B that is currently in probate and thus the potential right to 1% of any proceeds from the Heald Point allotment. Trinity Delia is 10 years old and resides with her uncle, Tony Delia.

8. Defendant is the United States of America. The Department of the Interior (DOI), was the department of the United States primarily involved along with its Bureau of Indian Affairs (BIA), its Office of Special Trustee (OST) and its agents and contractors.

9. Interested Parties who potentially have an interest in this litigation are:

  a. BP Exploration (Alaska) Inc. (BP), a Delaware corporation, which held the original Niakuk Alaska sub-surface oil lease, the successor in interest of Standard Alaska Production Company, lessee of BIA Lease F-89-01, the lease of Allotment F-14632 Parcel B relevant to this lawsuit, now a

COMPLAINT    - 4 -

participating company in the Niakuk and West Niakuk Participation Areas (PA) of the Prudhoe Bay Unit, and unit operator regarding Niakuk PA, West Niakuk PA and the operator of the long reach directional drilling oil and natural gas facility located on Heald Point Allotment F-14632 Parcel B.

b.  ConocoPhilips Alaska, Inc., a Delaware corporation, which is the successor in interest to ARCO Alaska Inc., which held an original 50% interest in the West Niakuk Alaska subsurface oil lease and is a current participate in the Niakuk PA, West Niakuk PA and the Prudhoe Bay Unit.

c.  ExxonMobil Corp., a New Jersey corporation, which held an original 50% interest in the West Niakuk Alaska subsurface oil lease and is a current participate in the Niakuk PA, West Niakuk PA and the Prudhoe Bay Unit.

d.  Forest Oil Corporation, a New York corporation, is a current participate in the Niakuk PA, West Niakuk PA and the Prudhoe Bay Unit.

e.  ChevronTexaco Corp., a Delaware corporation, is a current participate in the Niakuk PA, West Niakuk PA and the Prudhoe Bay Unit.

f.  State of Alaska is the holder of the subsurface oil and gas rights leased by the above companies and produced thru the long reach oil production facility on Heald Point Allotment F-14632 Parcel B.

g.  Inupiat Community of the Artic Slope, an IRA Regional Tribal Government (ICAS) is an agent and contractor of the United States' DOI, BIA regarding certain realty functions pertaining to this matter.

h.   Artic Slope Native Association, Limited (ASNA) is an agent and

contractor of the United States' DOI, BIA regarding certain realty

functions pertaining to this matter.

## IV.   GENERAL FACTS

10.   Andrew Oenga was an Inupiat Alaska Native. He lived along the North

Slope of Alaska from Barrow to the Prudhoe Bay area. He did not speak English. He

died on April 16, 1990. He was in his 70's at that time.

11.   In 1971 Andrew Oenga applied for an Alaska Native Allotment, which

included a peninsula of land known as Heald Point on the northeast edge of Prudhoe Bay

on the North Slope of Alaska. The allotment was eventually granted. Allotment F-14632

Parcel B.

12.   Allotment F-14632 Parcel B was of surface rights only. The oil or gas

rights of the subsurface estate had all been previously transferred by the United States to

the State of Alaska prior to the granting of Mr. Oenga's allotment.

13.   Through the probate of Mr. Oenga's estate, and the estates of some of his

heirs, Allotment F-14632 Parcel B is now held by Plaintiffs in the percentages listed

above in Parties.

14.   In 1989 a lease was entered into for ten (10) acres of the allotment

between Standard Alaska Production Company as Lessee and "Andrew Oenga, an Alaska

Native, of Barrow, Alaska [with the approval of the Secretary of the Department of the

Interior (the "Secretary") or his duly authorized representative, acting for, and on behalf

of Mr. Oenga." (emphasis added, bracketed text in original). A copy of this lease is

attached as Attachment A and incorporated herein. ("Original Lease").

15.   On July 29, 1993, BP proposed an Amendment of Lease F-89-01. On August 3, 1993 the BIA Fairbanks Agency Superintendent Samuel Demientieff "approved" the within Lease Amendment." This Letter/Amendment and accompanying drawing is attached as Attachment B and incorporated herein (1993 Letter/Amendment).

16.   No notice of BP's proposed 1993 Letter/Amendment was given to any Plaintiffs prior to the 1994 Letter/Amendment's approval by the United States in 1993. No Plaintiff or other allottee signed the 1993 Letter/Amendment.

17.   In January 1994 a second amendment of Lease F-89-01 was entered into. It is attached at Attachment C and incorporated herein (1994 Amendment). This amendment adjusted the payment periods from five year to four year time blocks, ¶ 5, and declared certain agreements to not be subleases, ¶ 13.

18.   In 1995 a third amendment of Lease F-89-01 was entered into. It is attached at Attachment D and incorporated herein (1995 Amendment). This amendment adjusted the rent due, ¶ 4, and prohibited Plaintiffs (Lessors) from communicating with BP (Lessee), ¶ 34. (Lessors "will under no circumstances contact the Lessee in person or by telephone, facsimile, electronic mail, United States mail, courier service, or any other means."). There have been no other amendments of Lease F-89-01.

19.   The understanding of the parties at the time of the original lease was that the lease was to allow use of Allotment F-14632 Parcel B as a road and pipeline to transport oil from a causeway/pipeline connecting an offshore oil production facility (drilling pad) of the "Niakuk Project" with a pipeline on the south end of the Oenga Allotment, see Original Lease Exhibit A.

20.     The 1993 Letter/Amendment changed the intended use of the property from a road/pipeline right-of-way to an oil production facility, which is the use to which the leased allotment has been put. See attached to 1993 Letter/Amendment.

21.     Under Lease F-89-01 as amended, rent was to be prepaid annually, and adjusted every five or four years. The rent was to be paid by BP to the United States and then disbursed to the Allottee[s]. The United States' rent collection obligation under the Lease, as amended, includes a) determining the amount of rent due, b) recovering that amount from BP and c) paying that amount to the Plaintiffs. The amount determination process under Lease F-89-01 includes a) applying a consumer price index adjustment factor to the prior rent due, b) having an appraisal performed to determine a fair market value rent account, and c) selecting the higher of the two as the rent due. Original Lease ¶¶ 5, 9.

22.     Under Lease F-89-01 as amended, interest on past due rent is to be calculated "at the rate of eighteen (18) percent per annum, compounded annually." Original Lease ¶ 7.

23.     An appraisal of Allotment F-14632 Parcel B was performed by the United States in 1993 for the 1994-1997 four year block of time (BIA 1993 Appraisal). It was done by an appraiser not properly qualified to appraise such commercial property. That appraisal did not appraise the property in its highest and best use as a multiple well-head long reach directional drilling oil production facility and did not use similar oil production facilities as comparables.

24.     A limited appraisal of Allotment F-14632 was performed by the United States in 1997 for the 1994-1997 four year block of time (1997 BIA Appraisal). That

COMPLAINT                                    - 8 -

appraiser's qualifications are unknown, the appraisal did <u>not</u> appraise the property in its highest and best use as a multiple well-head long reach oil production facility and did <u>not</u> use similar oil production facilities as comparables.

25.     An appraisal of Allotment F-14632 was performed for the United States in 2005 for the 2002-2005 four year block of time (2005 Appraisal). This appraisal was not provided to the Oenga Heirs until 2006. Issues regarding this 2005 appraisal and amounts properly due in the 2002-2005 time period are presently before the Department of the Interior Board of Indian Appeals and are not currently part of this action.

26.     The United States has not had an appraisal conducted under the lease for the 2006-2009 inclusive, four year block of time, although they have indicated one may soon be conducted.

27.     The Plaintiffs on several occasions have requested the United States to appraise their land as an oil production property (surface estate used in producing subsurface oil and gas deposits thru the use of multiple wellhead long reach directional drilling), and to use as comparables in the appraisal similarly situated surface estates used for similar oil production. The United States has failed to have the property so appraised and there is no reason to believe this will change in the appraisal to be used for the 2006-2009 inclusive block of years.

28.     All or nearly all of the oil and gas from the Niakuk Pool has been produced thru the production facility on Allotment F-14632 Parcel B.

29.     The amount collected by the United States for the Plaintiffs regarding Lease F-89-01 for the period 1994-2001 inclusive is $670,191. See spreadsheet attached as Attachment E and incorporated herein.

COMPLAINT                                    - 9 -

Exhibit 2
Page 9 of 58

## V.   CLAIM ONE
## MINERAL (OIL AND GAS) LEASE, - 25 CFR § 212.1 ET SEQ.

30.    All other paragraphs of this Complaint are incorporated herein.

31.    The Indian Mineral Leasing Act, 25 U.S.C. § 396 (a)-(g), and its regulations, 25 CFR Part 212 and related statutes and regulations addressing oil and gas leases constitutes money mandatory statutes and regulations for purposes of claims under the Tucker Act. See *Pawnee v. United States*, 830 F.2d 187 (Fed. Cir. 1987) (construing 25 CFR § 212).

32.    For oil and gas leases, 25 CFR § 212.41(b) mandates that the Secretary of the Interior collect a royalty rate of "16 2/3 percent of the amount or value of production produced and sold from the lease" unless a lesser rate is found by the Secretary to be in the best interests of Indian allottee."

33.    25 CFR Part 212 is generally applied to situations where the surface estate thru which the oil and gas is produced and the subsurface estate which hold the oil or gas deposit are both in one ownership held by the allottee. When the surface estate thru which the oil or gas is produced is in separate ownership from the subsurface estate, which holds the oil or gas deposit, both are properly considered part of the "mineral interest" and the owner of either is an "Indian mineral owner." 25 CFR § 212.3.

34.    The proper royalty due for the lease of Allotment F-14632 Parcel B is 4 1/6%, which is calculated by deducting the 12 ½% collected by the State of Alaska from BP or others for the lease of its subsurface estate containing the oil and gas produced thru Allotment F-14632 Parcel B from the 16 2/3% royalty of 25 CFR § 212.41(b) (16 2/3% - 12 ½% = 4 1/6%).

COMPLAINT                                   - 10 -

35.     Neither the Secretary of the Interior, nor his designee, has ever made a determination that it is in the best interests of the Plaintiffs to receive a royalty or rent less than provided by the above approach under 25 CFR § 212.41(b).

36.     Any provision of Lease F-89-01 which would preclude collection of the royalty due under 25 CFR § 212.41 (b)(2) is void and/or without force and effect as in violation of federal law.

37.     The amount that should have been collected as rent or royalty for the lease of Allotment F-14632 Parcel B for the period 1994-2001 is $46,597,471.   The amount that was collected for this period was only $670,191.   The difference of $45,927,280, plus 18% interest compounded annually is the amount that the United States has failed to collect and pay to the Plaintiffs.

38.     The United States has breached its fiduciary obligation and trust responsibility to the Plaintiffs by failing to collect and pay to Plaintiffs the amount of $45,927,280, plus interest at 18% per annum compounded annually, as the remainder of the 4 1/6% royalty due under 25 CFR § 212.41(b).

39.     Plaintiffs are entitled to a judgment for damages against the United States in the amount of $45,927,280, plus interest at the rate of 18% per annum compounded annually.

40.     Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that they are entitled to collect a 4 1/6% royalty on the value of all oil and gas produced thru Allotment F-14632 Parcel B both in the past and in the future.

41.     Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that any provision of Lease F-89-01 which would prevent collection of

COMPLAINT                                          - 11 -

rent as required under 25 CFR § 212.41(b) to be without force and effect as in violation of federal law.

42.     Plaintiffs are entitled to a preliminary and permanent injunction enjoining the United States from collecting and paying to Plaintiffs less than 4 1/6% royalty on all oil and gas produced thru Allotment F-14632 Parcel B in 2006 and each year thereafter, so long as the Allotment is leased for oil production purposes.

## VI.     ALTERNATIVE CLAIM TWO
## BUSINESS LEASE FAIR ANNUAL RENTAL, 25 CFR § 162.600 et seq.

43.     All other paragraphs of this Complaint are incorporated herein.

44.     The relief sought in Claim Two is in the alternative to Claim One and is sought only if all, or some aspect of the relief sought in Claim One pursuant to 25 CFR Part 212 and specifically 25 CFR § 212.41 is found to be inapplicable or not available.

45.     The Indian Long Term Leasing Act, 25 U.S.C. § 415(a) and its regulations, 25 CFR Part 162, constitute money mandating statutes and regulations for purposes of claims under the Tucker Act. See *Brown v. United States*, 86 F.3d 1554 (Fed.Cir. 1996).

46.     25 CFR § 162.604 mandates that all leases be for not less than "the present fair annual rental" unless the Secretary determines that receiving less "would be in the best interests of the landowner."

47.     Neither the Secretary of the Interior, nor his designee, has ever made a determination that it would be in the best interests of the Plaintiffs that they receive less than the "present fair annual rental" as provided in 25 CFR § 162.41(b).

48.     An appropriate method of determining the "present fair annual rental", 25 CFR § 162.604, that is to be collected by the United States for the Plaintiffs is the

COMPLAINT                        - 12 -

Exhibit 2
Page 12 of 58

periodic appraisal approach of Lease F-89-01, so long as the appraisals are properly conducted by competent, qualified appraisers, using proper appraisal techniques.

49.    The proper appraisal techniques to use to determine the "present fair annual rental" of Allotment F-14632 Parcel B under Lease F-89-01 involves a) appraising the allotment at its highest and best use, which in this case is its actual use as a multi-wellhead long reach directional drilling oil production facility, and b) using actual comparables of the rent paid to the owners of the surface estates used to produce oil or gas from a separately held subsurface estate in jurisdictions or under circumstances where the subsurface owner has no right to produce oil thru the surface estate against the surface owner's wishes. This was not done in the appraisal of Allotment F-14632 Parcel B.

50.    Appropriate "present fair annual rental" of Allotment F-14632 Parcel B for use as a multi-wellhead long reach directional drilling oil production facility thru which is produced oil from a separately held subsurface estate ranges from a 2 ½% royalty (*Flying Diamond Oil Corp. v Newton Sheep Co.*, 776 P.2d 618, 626-27, 629-31 [Utah 1989]), to a 4% royalty (*In re Newstar Energy of Texas*, 280 B.R. 623, 625 [Br. Ct. W.D. Mich. 2002]) to the 4 1/6% calculated from 25 CFR § 212.41(b) in Claim One).

51.    Any provision of Lease F-89-01 which would preclude collection of the royalty due under a proper appraisal as the "present fair annual rental" of 25 CFR § 162.604(b) is void and/or without force and effect as a violation of federal law.

52.    The amount that should have been collected by the United States and paid to the Plaintiffs as rent or royalty for the lease of Allotment F-14632 Parcel B for the period 1994-2001 is an amount to be determined by the Court in a range from a 2 ½% royalty ($27,936,134) to a 4 1/6% royalty ($46,597,471), plus interest on the unpaid rent

COMPLAINT                          - 13 -

at 18% per annum compounded annually. The amount that was collected for this period was $670,191. The difference in the range of $27,265,943 ( 2 ½% royalty) to $45,927,280 ( 41/6% royalty) to be determined by the Court, plus interest at 18% per annum compounded annually, is the amount that the United States has failed to collect and pay to Plaintiffs.

53. The United States has breached its fiduciary obligation and trust responsibility to the Plaintiffs by failing to collect and pay to the Plaintiffs an amount to be determined by the Court in the range from $27,265,943 (2 ½% royalty) to $45,927,280 (4 1/6% royalty), less the actual amount collected ($670,191) plus interest at 18% per annum compounded annually as the "present fair annual rental" of 25 CFR § 162.604(b).

54. Plaintiffs are entitled to a judgment for damages against the United States in an amount to be determined by the Court in a range from $27,265,943 (2 ½% royalty less actual collection) to $45,927,280 (4 1/6% royalty less actual collection) plus interest at 18% per annum compounded annually, for the lease of Allotment F-14632 Parcel B for the years 1994-2001 inclusive.

55. Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that all appraisals conducted as part of the collection process to determine the "present fair annual rental" for Allotment F-14632 Parcel B under 25 CFR § 162.604(b) be conducted so as to a) appraise the property at its highest and best use, which can include its present use, b) use as comparables only properties which are surface estates used for production facilities of oil or gas contained in subsurface estates under separate ownership in jurisdictions or under circumstances where the holder of the subsurface oil rights has no right to produce oil thru the surface estate against the surface

COMPLAINT                                    - 14 -

owners' wishes, and c) not use as comparables properties used for general commercial or industrial purposes or as a road or pipeline right-of-way or any other such generalized use.

56.     Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that any provisions of Lease F-89-01 which would prevent the collection of rent as determined to constitute "fair present annual rent" under 25 CFR § 162.604(b) to be without force or effect as in violation of federal law.

57.     Plaintiffs are entitled to a preliminary and permanent injunction enjoining the United States from conducting appraisals of Allotment F-14632 Parcel B pursuant to Lease F-89-01 a) which fail to appraise the Allotment at its highest and best use which can include its actual use as a multi-wellhead long reach directional drilling oil production facility, b) which fails to use actual comparables of surface estates used as production facilities to produce oil or gas from subsurface estates held separately, in jurisdictions or under circumstances where the holder of the subsurface oil rights has no right to produce oil thru the surface estate against the surface owner's wishes, and c) which uses as comparables properties used for general commercial or industrial purposes, or a road or pipeline right-of-way, or any other such generalized use.

## VII.   ALTERNATIVE CLAIM THREE
## WEST NIAKUK

58.     All other paragraphs of this Complaint are incorporated herein.

59.     The relief sought in Claim Three is in the alternative to Claims One and Two in the event that the relief sought herein as to oil produced from West Niakuk P.A. thru Allotment F-14632 Parcel B has not been already granted in Claims One or Two.

60.     Lease F-89-01 was entered into regarding development of only State oil leases obtained by and owned 100% by BP, known as "Niakuk." See Original Lease ¶ 1

("Niakuk Project"), 1993 Letter/Amendment ¶¶1 and 2 ("our Niakuk oil accumulation," "Niakuk Development Project"). The State of Alaska designated these state leases as the Niakuk Participation Area or Niakuk P.A.

61.    To the west of the Niakuk state leases were other leases originally purchased on a 50/50 basis by Exxon Corporation (Exxon) and ARCO Alaska, Inc. (ARCO). These were known as "West Niakuk" and designated by the State of Alaska as the separate "West Niakuk P.A."

62.    In early July 1993, ARCO approached the BIA or its agent seeking to lease a portion of Allotment F-14632 Parcel B. The BIA or its agent informed ARCO that the Allotment was subject to an option held by BP, but made no effort to seek the release of BP's option either at the time of approving the 1993 Letter/Amendment the next month, or at the time of the 1994 Lease Amendment.

63.    After the 1994 Lease Amendment was finalized, BP executed a "Facility Access Agreement" that is purported to have given Exxon and ARCO access to three wellheads and other facilities on Allotment F-14632 Parcel B to develop oil from the West Niakuk P.A. This was done without Plaintiffs knowledge or consent and in violation of Lease F-89-01 as amended.

64.    From production figures publicly available (2000-2006), over 40% of the oil produced through the production facility on Plaintiffs' allotment has been from the West Niakuk P.A.

65.    Plaintiffs have received no compensation for the use of their allotment in the production of oil and gas from the West Niakuk P.A. under Lease F-89-01 as amended negotiated by and approved by the United States.

COMPLAINT                          - 16 -

66.     Until 2003, the Plaintiffs had no knowledge of a) ARCO's interest in leasing a portion of Allotment F-14632 Parcel B and the United States' actions and inactions in that regard, or b) the production of West Niakuk P.A. oil thru the BP facility on the allotment.

67.     The use of Allotment F-14632 Parcel B and the production facility constructed on it to produce oil and gas from the West Niakuk P.A. which is not authorized by Lease F-89-01 as amended constitutes a trespass within the meaning of 25 CFR § 162.101, § 162.107(b).

68.     On December 1, 2005 Plaintiffs formally demanded that the Secretary of the Interior "immediately give Notice of Default, Breach, and Failure to Perform or Comply" regarding Lease F-89-01 as amended. One of the reasons given was the "[u]nauthorized and unreasonable use of the property by utilizing the property to produce oil from the West Niakuk Lease." Letter to Secretary Norton date December 1, 2005. The Secretary did not send the requested Notice.

69.     The above actions constitute a breach of the fiduciary obligation and trust responsibility owed the Plaintiffs by the United States both as to management of trust assets and collecting rents for use of those trust assets. The amounts that the United States has failed to collect regarding West Niakuk P.A. production thru Allotment F-14632 Parcel B are the royalties set out in Claim One and Claim Two as to the production from the West Niakuk P.A. and other trespass damages.

70.     Plaintiffs are entitled to a judgment for damages against the United States for mismanagement of assets and failure to collect rents in an amount to be determined by the Court by applying the royalty approaches of Claim One or Claim Two to the

COMPLAINT                                    - 17 -

production of West Niakuk oil and gas thru the production facility located on Allotment F-14632 Parcel B, plus interest and an additional amount to be determined by the Court for mismanagement of assets and allowing the continuing trespass.

71.    Plaintiffs are entitled to a declaratory judgment, declaring that the production of oil and gas from West Niakuk P.A. thru Allotment F-14632 Parcel B is not authorized by Lease F-89-01 as amended and doing so constitutes a trespass.

72.    Plaintiffs are entitled to a Preliminary and Permanent Injunction enjoining the United States from a) failing to issue a Notice of Default, Breach, and Failure to Perform or Comply to BP, b) failing to take all action necessary to halt the continuing trespass on Allotment F-14632 Parcel B that is occurring by the production of oil and gas from the West Niakuk P.A. thru the Allotment.

## VIII.  PRAYER

Wherefore, Plaintiffs pray that the Court:

a.    Enter Judgment against the United States in favor of Plaintiffs for damages under Claim One in the amount of $45,927,280, plus interest at 18% per annum compounded annually from the annual amounts the United States failed to collect.

b.    Enter the Declaratory Judgments as requested in Claim One.

c.    Enter the Preliminary and Permanent Injunctions as requested in Claim One.

d.    Award Plaintiffs their costs and attorney fees.

e.    Grant such other relief as is deemed appropriate.

COMPLAINT                                          - 18 -

IN THE ALTERNATIVE,

  f.  Enter Judgment against the United States in favor or Plaintiffs for damages in an amount to be determined by the Court in a range between $27,265,943 and $45,927,280, plus interest at 18% per annum compounded annually from the annual amounts the United States failed to collect.

  g.  Enter the Declaratory Judgments as requested in Claim Two.

  h.  Enter the Preliminary and Permanent Injunctions as requested in Claim Two.

  i.  Award Plaintiffs their costs and attorney fees.

  j.  Grant such other relief as is deemed appropriate

IN THE ALTERNATIVE,

  k.  Enter Judgment against the United States in favor of Plaintiffs for damages in an amount to be determined by the Court as requested in Claim Three.

  l.  Enter the Declaratory Judgment as requested in Claim Three.

  m.  Enter the Preliminary and Permanent Injunctions as requested in Claim Three.

  n.  Award Plaintiffs their costs and attorney fees.

  o.  Grant such other relief as is deemed appropriate.

DATED this **27** day of June, 2006.

       Respectfully submitted,

       *Raymond C. Givens*

       Raymond C. Givens
       Givens Law Firm
       Attorney for Plaintiffs

COMPLAINT       - 19 -

# ATTACHMENT A

BOOK **0053** PAGE **873**

U.S. Department of the Interior
Bureau of Indian Affairs

LEASE AGREEMENT

BIA Lease No. F-89-01

THIS Lease Agreement is made and entered into effective January 1, 1989, by and between Andrew Oenga, an Alaska Native, of Barrow, Alaska [with the approval of the Secretary of the Department of the Interior (the "Secretary") or his duly authorized representative, acting for, and on behalf of Mr. Oenga] hereinafter referred to as the "Lessor"; and Standard Alaska Production Company, a Delaware corporation, its agents, assigns, contractors, subcontractors and/or sublessees, hereinafter called "Lessee", in accordance with the provisions of existing law and regulations at [25 CFR 162 (1987)] which by reference are made a part hereof.

WITNESSETH, that for and in consideration of the mutual covenants and agreements provided herein, the Lessor hereby leases to the Lessee ten (10) acres of land, the "leased premises", which comprises a portion of Lessor's present and future interests in Parcel B of Alaska Native Allotment application F-14632. Said allotment is described as U.S. Survey 6904 T11N, R15E UM Sec. 1 and T12N, R15E UM Sec. 36. The remainder of the Native Allotment constitutes the "unleased premises". The allotment and leased premises are shown on the attached Exhibit A.

1.   Lease Term:   The term of this Lease Agreement shall be for twenty-five (25) years beginning on January 1, 1989, and expiring at midnight on December 31, 2014, unless extended or unless sooner terminated pursuant to the terms of this Lease Agreement. The anniversary date of this Lease Agreement is January 1st of each year following the year in which this Lease Agreement was executed.

The first ten years of the lease term shall constitute a period within which the Lessee shall attempt to obtain required permits for the Niakuk Project.

BOOK 0053 PAGE 874

During this period, unless written notice to procede has been served, Lessee has the option to cancel this Lease Agreement at any time. If Lessee cancels this Lease Agreement, Lessee shall provide written notice of such cancellation to the Lessor and the Superintendent, Bureau of Indian Affairs in Fairbanks, Alaska not less than ninety (90) days prior to any anniversary date of this Lease Agreement. Cancellation of this Lease Agreement shall not be effective unless the written notice required herein is timely received.

Also during the initial ten (10) year period, Lessee must notify the Lessor and the Superintendent, Bureau of Indian Affairs in Fairbanks, Alaska of the status of the permitting process and/or of the Niakuk Project. Such notice shall be given at the time the annual rental payments are made and at any other time that, in the opinion of the Lessee, such notice is either warranted and/or appropriate; provided however, that such notice is required within ninety (90) days of the date the Niakuk Project is either fully permitted or the project is cancelled or delayed.

If Lessee serves written notice that it intends to procede with the Niakuk Project, then this lease will be deemed to have been taken for consecutive five (5) year periods and provisions of Section 15 shall become operative and effective on the next ensuing anniversary date of this Lease Agreement. If the final period is less than five (5) years, Lessee shall only be obligated for rental payments up to the expiration date of this Lease Agreement or any extension thereof.

At the end of this initial ten (10) year period, provisions of Section 15 automatically become effective and operative.

    2.   Option to Extend:  The Lessee shall have the option, at its sole discretion, to extend the term of this Lease Agreement for additional five (5) year periods up to a maximum of twenty-five (25) years at the end of the original lease term. Notification of the exercise of this option shall be made in writing, not less than ninety (90) days prior to the original expiration date of this Lease Agreement.

    3.   Lease Bonus:  As a bonus for executing this Lease Agreement, Lessee hereby agrees to pay Lessor the sum of twenty-five thousand dollars.

BOOK 0053 PAGE 875

The bonus shall be paid upon approval of this Lease Agreement by the Superintendant, Bureau of Indian Affairs Fairbanks Agency.

4.   Lease Rentals: As rental for the leased premises, the Lessee agrees to pay the U.S.D.I. – Bureau of Indian Affairs for Andrew Oenga, c/o Bureau of Indian Affairs, 101 12th Avenue Box 16, Fairbanks, Alaska 99701 for credit to the Lessors Indian Individual Money Account (account #985-U183) the sum of $16,000 per year ($1,600.00/acre  X  10 acres) for each of the first five (5) years of the Lease Agreement. Lessee shall not be obligated to change either the designated payee or depository unless notified in writing, pursuant to section 31 below, at least sixty (60) days prior to the anniversary date of this Lease Agreement. Lease rental payments are due on the anniversary date of the lease and are payable in advance for the next succeeding year.

In the event of the death of the Lessor during the term of this Lease Agreement, and while the leased premises are in restricted status, all rentals remaining due or payable to the decedent or his representative under the provisions of the Lease shall be paid to the Superintendent, Bureau of Indian Affairs, 101 12th Avenue Box 16, Fairbanks, Alaska 99701 for credit to the Lessors Indian Individual Money Account. (For the purposes of this Lease Agreement, it is understood that restricted status is defined as a land status where lands are restricted or held for the benefit of Indians and are not subject to taxation; nor to alienation or encumbrances, and/or encroachment without the consent of the Secretary of Interior or his delegated representative.) While the leased premises are in restricted status, the Secretary may, in his discretion, suspend the direct rental payment provisions of this Lease, in which event the rentals shall be paid to the Superintendent, Bureau of Indian Affairs, Fairbanks, Alaska for credit to the account of this Lease Agreement.

5.   Lease Rental Adjustments: Rental payments may be increased at successive five-year intervals beginning in the sixth year after rental payments have begun. Such adjustments will be based upon either the fair market undeveloped rental value for the property established by a Bureau of Indian Affairs appraisal (see section 9, Reappraisal Procedures) or the

BOOK 0053 PAGE 876

adjustment will be based on the application of a "Cost Adjustment Factor"; which ever is greater. For the purposes of this Lease Agreement, "Cost Adjustment Factor" shall mean the ratio of (i) the most recently published Consumer Price Index to (ii) the most recently published Consumer Price Index as of the execution date of this Lease Agreement. The Consumer Price Index shall mean the U.S. Consumer Price Index, all items and all urban consumers, U.S. city average, 1982-84 equals 100, as first published, without seasonal adjustment, by the Bureau of Labor Statistics, Department of Labor, without regard to subsequent revisions or corrections by such Bureau. For the second and subsequent rental adjustments, the "Cost Adjustment Factor" shall mean the ratio of (i) the most recently published Consumer Price Index to (ii) the difference between the most recently published Consumer Price Index and the Consumer Price Index upon which the previous rental adjustment was or would have been based. Should this index be changed, altered, or ceased to be published the following will apply: a) if subject index is changed so that the base year differs from that used as of the year in which the term commences, the subject index shall be converted in accordance with the conversion factor published by the publisher of that index; b) if the subject index is discontinued or revised during the term of this agreement such index shall be replaced by another government index which will obtain substantially the same results as would be obtained if the subject index had not been discontinued or revised. It is agreed and understood by all parties that the rental payments will not escalate by more than 50% in any single five (5) year period.

6. <u>Delinquent Rental Payment</u>: Any payment received after the fifteenth (15th) day subsequent to the anniversary date of each year during the lease term shall be considered delinquent and a late fee of $250.00 will be assessed.

7. <u>Interest on Rentals Past Due</u>: If any rental payment is not paid within thirty (30) days after becoming due, interest at the rate of eighteen (18) percent per annum, compounded annually, will become due and payable from the day such rental was due, and will run until the delinquent rental is paid.

8. <u>Default and Remedies</u>: If the Lessee should fail to perform or to comply with any term or condition of this Lease Agreement, the Lessor,

after written notice giving Lessor a ten (10) day period within which to respond, may pursue his rights to re-enter, re-let, evict, terminate the Lease Agreement or recover rents or any other remedy he has under law. Lessee shall be given a reasonable time to cure such default or breach. Such a violation of the Lease Agreement shall also be acted upon in accordance with the regulation at 25 CFR 162.14 (1987), so long as title to the leased premises remains restricted by the Secretary.

9.    Reappraisal   Procedures:    Neither the Secretary nor any appraiser may consider the rentals provided for in this Lease Agreement for any purpose in determining the fair market rental rate pursuant to Paragraph 3 of this Lease Agreement. The Bureau of Indian Affairs review for purposes of establishing the fair rental value of the premises shall be based on the highest and best use of the premises as raw, unimproved vacant land at the time of the appraisal and shall not be based on the cost or value of improvements or developments made by the Lessee or any income the Lessee derives from the leased premises.

In all cases, Lessee shall be a proper party with standing to contest the reasonableness of the Secretary's rental determination.

If, during the term of this Lease Agreement, Lessor receives unrestricted title to the premises, the functions assigned to the Secretary hereunder shall be performed by a designated appraiser mutually acceptable to the parties, with the costs of such appraisal to be borne equally by the parties.

10. Use of Leased/Unleased Premises: The Lessee may use the leased premises for any and all oil field exploration, development, construction, facilities, production and support purposes, and for any other uses and purposes reasonably or conveniently related thereto. The unleased premises may be used for geotechnical, survey and design work at any time prior to commencement of construction activities. Said uses shall be without cost to lessee and will not require separate or additional permits from the Lessor. The Lessee shall make no unlawful uses of the leased and/or unleased premises, or knowingly permit any unlawful activity to be conducted thereon by others.

BOOK 0053 PAGE 878

11.  <u>Improvements</u>:   The   Lessee   may   construct   any   facilities (pipelines, access roads, causeway approaches, drilling pads, a construction staging pads or any other required facilities) on the leased premises as long as construction is limited to the ten (10) acres as herein described on Exhibit A.  This Lease Agreement may be amended to increase or decrease the size of the leased premises at any time at Lessee's sole discretion.  If the leased premises is so increased or decreased, Lessee shall proportionately increase or decrease its lease rental payments effective on the next ensuing lease anniversary date after such increase or decrease; provided however that rental amounts shall be pro rated beginning on the date that leased premises is increased or decreased.  It is agreed and understood by all parties that the leased premises cannot be reduced to less than the ten (10.0) acres originally taken under this Lease Agreement. All improvements placed on the leased premises by the Lessee shall remain the property of the Lessee during the term of this Lease Agreement and any extension thereof, and shall become the property of the Lessor at the final expiration of this Lease Agreement or any extension thereof.  Prior to the expiration or termination of this Lease Agreement, Lessee may remove any improvement, provided that Lessee restore the leased  premises  to  a  condition  satisfactory  to  the  Secretary  and  the regulatory agencies with jurisdiction over this project.  The Lessee shall not remove permanent improvements such as gravel pads, utilities and permanent structures that regulatory agencies determine cannot be removed without substantial damage to either the structure(s) or the leased premises.

12.  <u>Maintenance  of  Leased  Premises</u>:   The  Lessee,  at  its  sole expense, shall keep the leased premises, and any improvements placed thereon, in good order and repair, ordinary wear and tear excepted.

13.  <u>Sublease</u>:  Lessee may sublease all or portions of the leased premises to others, as it may see fit, for uses permitted under this Lease Agreement;  provided,  however,  that  the  Lessee  shall  remain  primarily responsible to the Lessor for the payment of annual rentals when due, and for the observance of all terms and conditions of this Lease Agreement.

14.  <u>Surrender at End of Term</u>:  The Lessee agrees that upon the last day of the Lease term, or upon the last day of any extension thereof, it will

BOOK 0053 PAGE 879

peaceably and quietly vacate and surrender the leased premises to the Lessor, free and clear of any hazardous waste and/or material and in a condition satisfactory to the Secretary and the regulatory agencies with jurisdiction over this project. The Lessee agrees that it will in a similar manner vacate and surrender in good condition any improvements remaining on the premises, ordinary wear and tear excepted.  The Lessee makes no warranty of fitness for a particular purpose or warranty of merchantability for any improvements left on the leased premises.

15.  Option to Cancel:  Lessee may, for any reason, cancel this Lease Agreement at the end of each five (5) year period during the Lease Agreement term or any extension thereof.  Such cancellation will be effective upon written notice to the Lessor and the Superintendent, Bureau of Indian Affairs in Fairbanks, Alaska not less than ninety (90) days prior to the end of each five (5) year period.

16.  Termination for Acts of God:  The Lessee shall have the right to cancel this Lease Agreement, and all of its obligations hereunder, after serving written notice consistent with other cancellation provisions in the Lease Agreement, one year after an event constituting an act of god.  As used in this Lease Agreement, an act of god means the prevention of Lessee from complying with any expressed or implied covenant of this Lease Agreement after efforts made in good faith, by reason of war, riots, acts of God, severe weather, acts of governmental authorities, failure or lack of adequate transportation facilities, or any other cause beyond Lessee's reasonable control whether similar to those enumerated or not.

17.  Insurance:  The Lessee hereby certifies that it is self-insured for any liability incurred under this Lease Agreement for an amount up to $5 million.  The Lessor shall receive the benefit of such self-insurance in the same fashion as if he were co-insured.  If self-insurance shall cease, the Lessee shall furnish the Lessor with certificates of insurance in an equivalent amount.

18.  Indemnification of the Lessor:  The Lessee shall protect, indemnify, and save the Lessor harmless against any and all liabilities,

BOOK 0053 PAGE 880

claims, damages, penalties, litigation, or costs and expenses related thereto (including, without limitation, reasonable attorney's fees) which may be imposed upon, incurred by, or asserted against the Lessor by reason of (a) any accident or injury to, or death of any person, or loss or damage to any personal or real property occurring on the leased premises, or any part thereof; (b) any use, non-use or condition of the leased premises, or any part thereof; (c) any failure on the part of Lessee to perform, forebear, or otherwise comply with any of the terms of this Lease Agreement; (d) performance of any labor, services, or the furnishing of any materials with respect to the leased premises, or any part thereof.  If any lawsuit or administrative proceeding is brought against the Lessor by reason of any such occurrence, the Lessee shall, upon the Lessor's request, defend the suit or proceeding, or cause the same to be defended by counsel designated by the Lessee.  Notice of such a proceeding shall be given by the Lessor to the Lessee as soon as practicable, and in no event later than ten (10) days after the Lessor has received notice of such a proceeding.

19.  <u>No Claims Against Lessor</u>:  Nothing contained in this Lease Agreement shall comprise the consent or request by the Lessor, whether expressed or implied, for the performance of any labor or services, or the furnishing of materials or other property, with respect to the leased premises or any part thereof; nor shall it give the Lessee any right, power, or authority to contract for or permit the performance of any labor or services, or the furnishing of any materials or other property, in any manner which would permit the making of a valid claim for payment against the Lessor.

20.  <u>Condition of the Leased Premises</u>:  The Lessee agrees that it is entirely familiar with the physical condition of the leased premises.  The Lessor makes no representation or warranty with respect to the condition of the leased premises, nor with respect to its fitness or availability for any particular use or purpose.  The Lessor shall not be liable for any latent or patent defect in the leased premises.

21.  <u>Approval</u>:  It is understood and agreed between the Lessor and the Lessee that this Lease Agreement, and any subsequent amendment or extension thereto, shall be valid and binding only after approval by the

BOOK 0053 PAGE 881

Secretary or his authorized delegate pursuant to 25 CFR 162 (1987), except as may be provided in paragraph 26 herein.

22. <u>Relinquishment of Restricted Title by the Secretary</u>: Nothing contained in this Lease Agreement shall delay or prevent a termination of federal trust responsibilities with respect to the leased premises, by issuance of a fee patent or otherwise during the term of this Lease Agreement or any extension thereof. Termination of such responsibilities shall not act to abrogate the Lease Agreement. The Secretary shall notify the Lessor and the Lessee of any such change in the legal status of title to the leased premises. If a certificate of competency removing restrictions against alienation or encumbrance is issued by the Secretary to the Lessor, it shall be promptly recorded by the Lessor, and thereafter all references in this Lease Agreement to the powers, duties, or discretion of the Secretary regarding this Lease Agreement, or any extension thereof, shall have no further applicability or effect.

23. <u>Taxes and Assessments</u>: The Lessee shall be responsible for, and shall timely pay, all lawful federal, state, borough or local taxes, fees, or assessments (including any interest and penalties thereon) which during the term of this Lease Agreement are assessed, levied, imposed upon, or become a lien upon the leased premises or any interest therein, or upon any alteration, addition, or improvement thereto, or upon personal property of any kind owned by and placed upon the leased premises by the Lessee, or upon any occupancy, use or possession of the leased premises or any part thereof, before any fine, penalty, interest, or cost becomes applicable. Lessor shall promptly provide to the Lessee all notices of levy, taxation, assessment or lien which Lessor receives with respect to the leased premises, and the Lessee shall have full authority to contest or seek adjustment of any such tax or assessment, by appropriate administrative or judicial proceedings. The Lessee shall not be obligated to pay any such taxes, fees or assessments which it is contesting in good faith, until the final adjudication of such dispute. It shall take reasonable action, however, to assure that Lessor's interest in the premises is not prejudiced by such contest.

24. <u>Eminent Domain</u>: If the leased premises, or any part thereof, is condemned or taken by eminent domain for any lawful use or purpose, then as

BOOK 0053 PAGE 882

to the portion so taken, the term of this Lease Agreement shall terminate as of the date of title vesting in such proceeding, all rentals then due shall be paid to that date, and the parties shall thereafter have no claim against each other for the value of the unexpired term of the Lease Agreement as to that portion.  In the event of any such condemnation or taking, whether whole or partial, the Lessee shall be entitled to a pro rata share of the award paid for such condemnation, based upon the proportion of the award attributable to the value of any improvements placed upon the leased premises by the Lessee.

25.  Inspection:  The Secretary, the Lessor, and their authorized representatives may enter the leased premises or any part thereof at all reasonable times and subject to reasonable conditions, including but not limited to, reasonable notice to Lessee, for the purposes of inspecting the premises, except that the Secretary and his authorized representatives may inspect as authorized by law or to exercise any other right of Lessor provided in this Lease.

26.  Right of Access:  The Lessor retains a right of reasonable access across the leased premises.  Such access shall not conflict with the purposes of this Lease Agreement or the uses and improvements authorized hereunder.  For purposes of such access, the Lessor shall be entitled to use the access road constructed by Lessee pursuant to this Lease Agreement, subject to compliance with Prudhoe Bay Unit security procedures.

27.  Entire Agreement:  This Lease Agreement, together with any exhibits attached hereto, comprises the entire agreement and sets forth all prior covenants, promises, agreements, conditions, and understandings, whether oral or written, between the Lessor and the Lessee and concerning the leased premises.  No subsequent agreement, condition or understanding, whether oral or written, which is not set forth in this Lease Agreement, or in any duly-approved written amendment thereto, shall be enforceable unless it is reduced to writing and signed by all the parties to this Lease Agreement.

28.  Lease Amendment and Interpretation:  If any provision of this Lease Agreement, or the application thereof, is invalid or unenforceable, the remainder of this Lease Agreement and other applications of such provisions

BOOK 0053 PAGE 883

shall not be affected by it, unless otherwise specifically provided herein. This Lease Agreement may be changed, waived, discharged, or terminated only by a document in writing signed by the party against whom enforcement of such change, waiver, discharge, or termination is sought.  The paragraph headings in this Lease Agreement are for purposes of reference only, and shall not limit or define the meaning of such paragraphs.  This Lease Agreement may be executed in several counterparts, each of which is an original, but all of which shall constitute one instrument.

29. <u>Waivers</u>:  The waiver of any breach or default of any covenant, condition or stipulation contained herein shall not be deemed to cause a waiver of any subsequent breach or default of the same or any other covenant, condition or stipulation, nor shall any failure to enforce any right or seek any remedy with respect to any obligation under this Lease Agreement prejudice or affect the future rights or remedies of the parties.

30. <u>Successors in Interest</u>:  Each term, covenant, and condition contained in this Lease shall be binding upon and shall inure to the benefit of the heirs, executors, administrators, successors, and assigns of the parties hereto.  So long as title to the leased premises is in a restricted status, all of the Lessee's obligations under this Lease Agreement shall run to the United States as well as to the Lessor.

31. <u>Notices</u>:  All notices and other communications required or convenient under this Lease Agreement shall be in writing, and shall be deemed to have been given when mailed by first class certified mail, postage prepaid thereon, and addressed as follows: (a) Superintendent, Bureau of Indian Affairs, 101 12th Ave. Box 16, Fairbanks, Alaska  99701, or at such other address as the Secretary shall have furnished to the parties in writing; (b) LESSOR: Mr. Andrew Oenga, P.O. Box 201, Barrow, Alaska 99723, or at such other address as the Lessor shall have furnished to the parties in writing; and (c) Standard Alaska Production Company, Attn: Land Manager, P.O. Box 196612, Anchorage, Alaska 99519-6612, or at such other address as the Lessee shall have furnished to the parties in writing.  Notices to Lessee regarding any changes of rental recipient (payee) and/or depository shall not be binding upon Lessee unless said notice is received at least sixty (60) days prior to the Lease Agreement  anniversary date.

.×0053 PAGE 884

32.  Interest of Members of Congress or Department:  No member of Congress, or agent of the Department of the Interior, shall receive any share of this Lease Agreement, or any benefit that may arise herefrom.  This provision shall not be construed to extend to the general benefits received by the Lessee as a corporation, on behalf of all of its shareholders.

33.  Corporate Qualification:  Standard Alaska Production Company certifies that it is in all respects qualified to enter into and perform this Lease Agreement, as attested by Bureau of Land Management qualification file 063890 and State of Alaska qualification file ADL QF-1768.  The Lessor has the following current bonds on file: Alaska Oil and Gas Conservation Commission Bond 2S100302630-277  ($200,000),  Alaska  Statewide  Oil  and  Gas  Bond 2S100302630-295 ($500,000) and  Alaska Statewide Miscellaneous Land Use Bond 64S10052736BCA ($1,000,000).

BOOK **0053** PAGE **885**

FOR THE LESSOR:

DATED: _Jan. 17, 1989_          By: _Andrew Oenga_
                                     Andrew Oenga

Approved as to form and substance, and with the further assurance that this Agreement and its consequences have been explained to Andrew Oenga in a language in which he is fluent:

By: _Rey A. Okakok_

STATE OF ALASKA          )
                         ) ss.
SECOND JUDICIAL DISTRICT )


        The foregoing instrument was acknowledged before me this _19th_ day of _January_, 1989 by _Andrew Oenga_ the Lessor.


                                     _____
                                     NOTARY PUBLIC in and for Alaska
                                     My Commission Expires: _1/27/92_

BOOK 0053 PAGE 886

## AFFIDAVIT OF INTERPRETER

I, _PER A. OKAKOK_ , of lawful age, being first duly sworn state the
following:   I interpreted this Lease Agreement for Andrew Oenga in the
language in which he is fluent (Inupiaq) on _JAN 19_ , 1989: and I
performed a true translation of this Lease Agreement; and that Mr. Oenga
stated that he executed this Lease Agreement of his own free will and was not
acting under duress, menace, fraud or undue influence of any person; and that
Mr. Oenga declared that he fully understood this Lease Agreement.

_Per A. Okakok_

STATE OF ALASKA            )
                           )  ss.
SECOND JUDICIAL DISTRICT   )


The foregoing instrument was sworn to and executed before me this _19th_ day
of _January_ 1989, by _Per A. Okakok_

Notary Public

My Commission Expires _1/27/92_

BOOK 0053 PAGE 887

FOR THE LESSEE:

                    Standard Alaska Production Company

DATED:_____        By:_____

                              Its:_____

Approved as to form and substance:

_____

John A. Reeder, Senior Attorney

STATE OF ALASKA          )
                         )  ss.
THIRD JUDICIAL DISTRICT  )


    The foregoing instrument was acknowledged before me this _16th_ day of _January_, 1989 by _G.N. NELSON_, the _PRESIDENT_ of Standard Alaska Production Company, a Delaware corporation, on behalf of the corporation.

                    _____
                    NOTARY PUBLIC in and for Alaska
                    My Commission Expires: _8/8/89_



BOOK 0053 PAGE 888

FOR THE SECRETARY OF THE INTERIOR: The within Lease Agreement is hereby approved, this 20 day of January, 1989, pursuant to the authority delegated in Departmental Manual Release Number 2784; 230 DM 1-3, March 16, 1988 and redelegated by addendum to 10 BIAM, July 1, 1988.

DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS

DATED: 1/20/37                    By _____
                                    Superintendent
                                    Fairbanks Agency


STATE OF ALASKA          )
                         )  ss.
FOURTH JUDICIAL DISTRICT )


The foregoing instrument was acknowledged before me this 20th day of January, 1989 by M.T. Stassanpiano, the Fairbanks Agency Superintendent, United States Department of the Interior.

NOTARY PUBLIC in and for Alaska
My Commission Expires: 1/27/92

6183W

EXHIBIT A       BOOK 0053 PAGE 889



U.S. Survey 6904

T12N, R15E UM Sec. 36

T11N, R15E UM Sec. 1

Right-of-way (Approximate)
    Length      4,000'
    Width       100'
    Area        9.2 acres

**STANDARD**
ALASKA PRODUCTION

NIAKUK PROJECT LOCATION MAP

SCALE:
As Noted



BOOK 0053 PAGE 890

PLAN VIEW

Proposed Pipelines

Access Road

Toe

Slope

C

C'

Slope

Tundra

Tundra

8 9-0 0 7 2
6/ —
c/c 2 —

RECORDED FILED
BARROW RECORDING
DISTRICT

FEB 1 2 00 PM '89

REQUESTED BY
STANDARD
ADDRESS
ALASKA PRODUCTION Co.
to to

Water Injection
Production
Future

Gravel

5'

1  3

5'

30'

Approx. 10'

60'

35' Min.

CROSS SECTION C-C'
(Looking North)

**STANDARD**
ALASKA PRODUCTION

NIAKUK ONSHORE ACCESS ROAD
AND PIPELINES
SECTION C-C'

Return To:
Stu Hirsh
P.O. Box 196612

# ATTACHMENT B

985    1373

 **BP EXPLORATION**

BP Exploration (Alaska) Inc.
900 East Benson Boulevard
P.O. Box 196612
Anchorage, Alaska 99519-6612
(907) 561-5111

July 29, 1993

Mr. Samuel Demientieff, Superintendent
Bureau of Indian Affairs
101 12th Avenue, Box 16
Fairbanks, Alaska  99701

### Notification of Niakuk Project Commencement

### Request to Amend Surface Lease F89-01

Dear Mr. Demientieff:

On January 1, 1989, BP Exploration (Alaska) Inc. (formerly Standard Alaska Production Company) entered into a surface lease agreement with Mr. Andrew Oenga for 10 acres of his 40 acre native allotment (F-14632) on Heald Point. The Lease provided authorization for BP to construct production facilities to support development of, and production from, our Niakuk oil accumulation.

Pursuant to requirements of Section 1 of the Lease, BP hereby provides notice to the Bureau of Indian Affairs that the first phase of the Niakuk Development Project has been approved and that development will procede on an accelerated schedule during the latter half of 1993.  Further pursuant to Section 1, the Lease is converted from a year-to-year basis to a fixed twenty-five year term.

In order to make effective use of both the Leased and Unleased Premises and to protect our facilities from erosion, an armored production pad will be constructed at the tip of Heald Point.   We have also redesigned and relocated our pipelines to the east side of the access road.

Consequently, pursuant to Section 11 of the Lease, BP hereby requests that the Lease be amended so as to increase the size of the Leased Premises from 10 acres to 20 acres effective August 1, 1993.   The new Leased Premises are shown on the enclosed general location map. We will provide you with a more detailed exhibit to be attached to the Lease as soon as it becomes available.

Rent for the enlarged Leased Premises will be due January 1, 1994 and will be prorated back to the effective date of the Lease amendment.

Please indicate your approval of this amendment by signing in the space provided below and returning one original of this letter to the undersigned at our letterhead address.  The remaining original is for your records.

Barrow Recording District

Mr. Samuel Dimeintieff
July 29, 1993
Page 2

We would appreciate your early attention to this matter as we hope to be in a position to begin gravel placement in early August.. Please contact me at 564-4841 if you have any questions or if you need any addtional information.

Sincerely,

Stu Hirsh, CPL
Senior Landman

The within Lease Amendment is hereby approved, pursuant to the authority delegated by 209 DM 8 dated November 17, 1981, Secretary's Order No. 3150 dated May 11, 1992, as amended March 5, 1993, and 10 BIAM Bulletin 13, dated November 19, 1992, as amended April 8, 1993, and the Addendum to 10 BIAM 3, dated January 17, 1989.

8-3-93

Samuel Demientieff, Superintendent          Date
Bureau of Indian Affairs
Fairbanks, Agency

985   1373

RECORDED
AT THE SERVICES CENTER
94 FEB -4 PM 2:12
BUREAU OF INDIAN AFFAIRS
JUNEAU AREA OFFICE

Return to:

Arctic Slope Native Association
Realty Office
600 University Avenue
Fairbanks, Alaska  99709



# ATTACHMENT C

Original Instrument Record·······t Book 53 Page 873·················· 985    1366

# AGREEMENT TO AMEND BIA LEASE F-89-01

This Agreement is made and entered into by and between Leroy Oenga, Wallace Oenga and Michael M. Delia whose address is P. O. Box 201, Barrow, Alaska 99723, Georgene Shugluk whose address is P. O. Box 91003, Atqasuk, Alaska 99791 and Jenny Oenga whose address is 309 Paystreak, Fairbanks, Alaska who are the immediate heirs and successors in interest of Andrew Oenga ("Lessors") [with the approval of the Secretary of the Department of the Interior ("the Secretary")] and BP Exploration (Alaska) Inc., the successor in interest to Standard Alaska Production Company ("Lessee") whose mailing address is P. O. Box 196612, Anchorage, Alaska 99519-6612 all of whom are collectively hereinafter are referred to as the ('Parties').

**Whereas,** the Lessee has previously leased a 20 acre portion of Lessor's Parcel B of Native Allotment F-14632 under provisions of BIA Lease F-89-01 (as amended) ("Lease") from the Lessors; and

**Whereas,** the Lessee desires to exercise its rights under the Paragraph 11 of the Lease to increase the size of the Leased Premises to include the entirety of Parcel B of Native Allotment F-14632; and

**Whereas,** the Lessors desire to lease the remaining unleased 20 acres of Parcel B to the Lessee; and

**Whereas,** the Parties desire to provide that lease rental payments be made in biennially instead of annually; and

**Whereas,** the Parties desire to provide for lease rental adjustments every four years instead of every five years; and

**Whereas,** the Parties desire that the Lease reflect the current heirs and successors in interest of the original Lessor and Lessee; and

**Whereas,** the Parties desire to amend the Lease to reflect the contractual relationship between the Arctic Slope Native Association Limited ("ASNA") and the Bureau of Indian Affairs ("BIA") wherein ASNA performs certain administrative realty related services on the behalf of the BIA; and

**Now Therefore,** in consideration of the mutual promises and covenants contained herein, the Parties agree as follows:

## Lease Preamble

The description of the Leased Premised in the Lease Preamble is revised to read "The Leased Premises consists of the entire Parcel B of Alaska Native Allotment F-14632 legally described as USS 6904 T11N, R15E UM Sec. 1 and T12N, R15E UM Sec. 36."

## Paragraph 4. - Lease Rentals

The last sentence in Paragraph 4 is revised to read "Lease rental payments are due on the anniversary date of the lease and are due and payable sixty (60) days in

Agreement to Amend
BIA Lease F-89-01

985   1366

advance for the next succeeding biennial period beginning with the rental payment due January 1, 1994 for the period January 1, 1994 through December 31, 1995. Lessee shall continue to make rental payments on a biennial basis sixty days before the anniversary date of the Lease. Lessors shall make no additional claims, requests or demands of Lessee for Lease rental payments, rental payment adjustments or rental payment advances except as set forth in paragraph 5."

## Paragraph 5. - Lease Rental Adjustments

The first sentence in Paragraph 5 is revised to read "Rental payments may be increased at successive four-year intervals beginning in the sixth year after rental payments have begun".

## Paragraph 12.

Paragraph 12 is revised to read :

"The Lessee, at its sole expense, shall keep the leased premises, and any improvements placed thereon, in good order and repair, ordinary wear and tear excepted; provided however that this provision shall not in any manner be construed so as to require the Lessee to protect the Leased Premises from natural erosion beyond the measures which, in its sole discretion, it deems necessary to protect its improvements placed thereon.

## Paragraph 13.

The following paragraph is added to Paragraph 13:

"The Lessee shall provide written notice to the Lessor and to the Arctic Slope Native Association Limited if the Leased Premises are subleased. For the purposes of this Agreement, a sublease shall not include (a) facility sharing agreements or other transactions which do not convey an interest in real property, (b) any interest in the mineral estate underlying this Surface Lease or (c) any use of State of Alaska tidelands adjacent to the Leased Premises."

## Paragraph 15. Option to Cancel

The second sentence in Paragraph 15 is revised to read:

"Such cancellation will be effective upon written notice to the Lessor and the Arctic Slope Native Association Limited in Barrow, Alaska not less than ninety (90) days prior to the end of each five (5) year period."

## Paragraph 31. Notices

Item (a) is revised to read:

"Realty Officer, Arctic Slope Native Association Limited, P. O. Box 1232, Barrow, Alaska 99723."

Page 2

BOOK **0074** PAGE **294**

985     1366

Agreement to Amend
BIA Lease F-89-01

Item (b) is revised to read;

"Mr. Leroy Oenga
P. O. Box 201
Barrow, AK  99723

Ms. Georgene Shugluk
P. O. Box 91003
Atqasuk, AK  99791

Ms. Jenny Oenga
c/o 309 Paystreak
Fairbanks, AK  99712"

Mr. Michael M. Delia
P. O. Box 201
Barrow, AK  99723

Mr. Wallace Oenga
P. O. Box 201
Barrow, AK  99723

Item (c) is revised to read:

"BP Exploration (Alaska) Inc. Attn. Land Manager
P. O. Box 196612
Anchorage, AK  99519-6612"

## Effective Date of This Agreement

This Agreement shall be effective when fully executed and approved by the Secretary;
provided however, that the Lessee's election to increase the size of the Leased
Premises shall be deemed effective on July 1, 1993 for the purposes of calculating
rental payments pursuant to Paragraph 11 of the Lease.

## Entire Agreement

This Agreement constitutes the entire agreement between the Parties in so far as this
Lease amendment is concerned and supersedes any previous understandings
whether written or oral.  With the exception of the Lease amendments described
above, the remaining provisions of Lease remain unchanged.

BOOK **0074** PAGE **295**

Agreement to Amend
BIA Lease F-89-01

In Witness Whereof, the Parties have executed this Agreement on the dates below
their respective signatures.

FOR THE LESSOR

_Wallace Oenga_    1-17-94 wo      _Leroy L Oenga Sr_   1/17/94
Wallace Oenga       Date           Leroy Oenga       Date

_Jenny Oenga_    1/18/94      _Michael M. Delia_   1-17-94
Jenny Oenga         Date           Michael M. Delia     Date

_Georgene Shugluk_    1-17-94
Georgene Shugluk       Date

FOR THE LESSEE

_____    _____
Jack E. Golden              Date
Vice President Endicott and
Development Programs

FOR THE SECRETARY

The within Lease Amendment is hereby approved, pursuant to the authority delegated
by 209 DM 8 dated November 17, 1981, Secretary's Order No. 3150 dated May 11,
1992, as amended March 5, 1993, and 10 BIAM Bulletin 13, dated November 19,
1992, as amended April 8, 1993, and the Addendum to 10 BIAM 3, dated January 17,
1989.

_Arnold E. Jojo_    1-20-94
Samuel Demientieff, Superintendent   Date
Bureau of Indian Affairs
Fairbanks, Agency

985
1366

Exhibit 2
Page 47 of 58

BOOK 0074 PAGE 296

Agreement to Amend
BIA Lease F-89-01

985    1366

## ACKNOWLEDGEMENTS

STATE OF ALASKA                    )
                                   ) ss.
SECOND JUDICIAL DISTRICT           )

    THIS IS TO CERTIFY that on this the 17 day of January , 1994 before me the undersigned, a Notary Public for the State of Alaska personally appeared Leroy Oenga, and Michael M. Delia, and executed the foregoing document. WITNESS my hand and official seal this 17 day of January , 1994 at Barrow, Alaska.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

*Diane L. Stevens*
NOTARY PUBLIC FOR ALASKA

My commission expires: 7/29/97

STATE OF ALASKA                    )
                                   ) ss.
FOURTH JUDICIAL DISTRICT           )

    THIS IS TO CERTIFY that on this the 18 day of Jan , 1994 before me the undersigned, a Notary Public for the State of Alaska personally appeared Jenny Oenga, and executed the foregoing document. WITNESS my hand and official seal this 18 day of Jan , 1994 at Fairbanks, Alaska.

OFFICIAL SEAL
KATHLEEN F. DICKINSON
NOTARY PUBLIC
FAIRBANKS, ALASKA
My Comm. Expires January 27, 1996

NOTARY PUBLIC FOR ALASKA

My commission expires: 1/27/96

STATE OF ALASKA                    )
                                   ) ss.
SECOND JUDICIAL DISTRICT           )

    THIS IS TO CERTIFY that on this the 17 day of January , 1994 before me the undersigned, a Notary Public for the State of Alaska personally appeared Wallace Oenga, and executed the foregoing document. WITNESS my hand and official seal this 17 day of January , 1994 at Barrow, Alaska.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

*Diane L. Stevens*
NOTARY PUBLIC FOR ALASKA

My commission expires: 7/29/97

BOOK 0074 PAGE 297

Agreement to Amend
BIA Lease F-89-01

985    1366

STATE OF ALASKA )
) ss.
Second JUDICIAL DISTRICT )

THIS IS TO CERTIFY that on this the 17 day of January, 19 74 before me the undersigned, a Notary Public for the State of Alaska personally appeared Georgene Shugluk, and executed the foregoing document. WITNESS my hand and official seal this 17 day of January, 1994 at Barrow, Alaska.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 22, 1997

_Diane L. Steven_
NOTARY PUBLIC FOR ALASKA
My commission expires: _7/29/97_

STATE OF ALASKA )
) ss.
THIRD JUDICIAL DISTRICT )

The foregoing instrument was acknowledged before me this 13th day of January 1994, by Jack E. Golden, the Vice President of Endicott and Development Programs of BP Exploration (Alaska) Inc., a Delaware corporation, on behalf of the Corporation.

_Dawn R. Oonatser_
NOTARY PUBLIC FOR ALASKA
My commission expires: _8/4/96_

Page 6

01-19-1994 09:49        9(      763        ARCTIC SLOPE N. .VE ASSOCIATION        P.02/07

BOOK 0074 PAGE 298

**Arctic Slope Native Association Limited**     985    1366
P.O. Box 1232
Barrow, AK  99723
(907) 852-2762

This is to certify that the attached amendment to BIA lease F-89-01 for Native Allotment F 14632 between BP Exploration and the Heirs of Andrew Oenga is in conformity with existing laws and regulations, and all realty records checked as to description, ownership and proper identification of grantor/grantee and conformity extends to and includes all supporting documents and other material as may be specified and required in the Code of Federal Regulations.

*Diane Stevens*
ASNA Realty Officer

Approved:   1-20-94
Date

*[signature]*
Superintendent, BIA Fairbanks Agency

Return To:
Stu Hirsh
BP Exploration (Alaska) Inc.
P.O. Box 196612
Anchorage, AK  99519-6612

9 4-0 8 1 5
BARROW REC 33 -
DISTRICT
REQUESTED BY *BP*

'94 MAY 2 AM 11 40
5 50613

# ATTACHMENT D

qnial Lease   rded in Book 0053 at Page 373
Lands located in T11N/R15E UM Sec. 1 and T12N, R15E   985   1472
Sec 36 being USS 6904.

N

## Third Amendment to BIA Lease F-89-01   BOOK 79 PAGE 223
Barrow Recording District

This agreement is made and entered into by and between Leroy Oenga and Wallace Oenga whose address is P.O. Box 201, Barrow, Alaska, Michael Delia whose address is 300 Slater Drive, Fairbanks AK 99701, Georgene Shugluk whose address is P.O. Box 91003, Atqasuk, Alaska 99791, and Jennie Oenga whose address is P.O. Box 55778, Fairbanks, Alaska 99705, who are the immediate heirs and successors in the interest of Andrew Oenga (Lessors) and BP Exploration (Alaska) Inc., the successor in interest to Standard Alaska Production Company (Lessee) whose address is P.O. Box 196612, Anchorage, Alaska 99519-6612 all of whom are collectively hereinafter are referred to as the "Parties".

Whereas, the Lessee has previously leased the 40-acre portion of Lessor's Parcel B of Native Allotment F-14632 under provisions of BIA Lease F-89-01 as amended ("Lease") from the Lessors; and

Whereas, Leroy Oenga, Wallace Oenga, Michael Delia and Georgene Shugluk desire to use a portion of the rental proceeds from the Lease to collateralize four personal loans they are seeking to obtain from the National Bank of Alaska; and

Whereas, Jennie Oenga does not seek to obtain a loan but is agreeing to changes in the lease to assist her family members in obtaining these loans; and

Whereas, the Lessors desire to provide that lease rental payments be made annually instead of biennially; and

Whereas, the Lessors desire to adjust the date at which the Lessee may cancel the Lease so that it shall coincide with the term of the personal loans they are seeking; and

Whereas, the Parties desire to amend the Lease to reflect their Lessor/Lessee relationship as it relates to the contractual relationship between the Arctic Slope Native Association Limited ("ASNA") and the Bureau of Indian Affairs ("BIA") wherein ASNA performs certain realty services on the behalf of BIA for the benefit of the Lessors.

Now therefore, in consideration of the mutual promises and covenants contained herein, the Parties agree as follows:

## Paragraph 4. Lease Rentals

The last sentence in the first paragraph of Paragraph 4 is revised to read "Lease rental payments are due and payable sixty (60) days in advance of the anniversary date of this Lease Agreement for the next succeeding annual rental period beginning with the rental payment due January 1, 1996 through December 31, 1996. Lessee shall continue to make rental payments on an annual basis sixty days prior to the anniversary date of this Lease Agreement. Lessors shall make no additional claims, requests or demands of Lessee for Lease rental payments, rental payment adjustments or rental payment advances except as set forth in paragraph 5."

A new paragraph is added to Paragraph 4 as follows: "The rental payment due on November 1, 1995 for the period January 1, 1996 through December 31, 1996 is eighty-thousand six-hundred forty dollars ($80,640.00) which payment shall continue to be adjusted at four-year intervals pursuant to Paragraph 5 below, as amended."

A new paragraph is added to the end of Paragraph 4 as follows: "Lessee agrees to make lease rental payments to the National Bank of Alaska, or any other financial institution of the Lessor's choosing provided that Lessors furnish Lessee properly executed Assignment of Proceeds, Rental Division Order and/ or other written instruments at least 30 days prior to the rental due date as stipulated herein."

## Paragraph 5.  Lease Rental Adjustments

A new paragraph is added to the end of Paragraph 5 as follows: "Rental payments may next be adjusted November 1, 1997 for the adjustment period January 1, 1998 through December 31, 2002 and subsequent four-year periods unless this Lease Agreement expires or is canceled pursuant to provisions of Paragraph 15 below, as amended.

## Paragraph 15.  Option to Cancel

The first sentence of Paragraph 15 is revised to read "Lessee may, for any reason, cancel this Lease Agreement at the end of each five (5) year period during the Lease term, or any extension thereof, with the first right to cancel accruing on January 1, 2001."

## Paragraph 34.  Relationship of the Parties

A new Paragraph 34 is added to this Lease Agreement as follows:

"Lessors hereby designate and appoint the BIA, acting by and through ASNA, to be their sole contact with Lessees for any and all matters arising out of this Lease Agreement or any amendment thereto.  Lessors agree that they will under no circumstances contact the Lessee in person or by telephone, facsimile, electronic mail, United States mail, courier service, or any other means.  If Lessors contact Lessees, Lessees shall be  under no obligation to respond to Lessors contacts and shall refer all such contacts to ASNA or the BIA."

## Effective Date of This Agreement

This Agreement shall be effective when fully executed and approved by the Secretary of Interior.

## Entire Agreement

This Agreement constitutes the entire agreement between the Parties insofar as this lease amendment is concerned and supersedes any previous understandings whether written or oral.  With the exception of the two preceding lease amendments, the remaining provisions of Lease, as previously amended, remain unchanged.

In Witness Whereof, the Parties have executed this Agreement on the dates adjacent to their respective signatures.

FOR THE LESSORS

_Wallace Oenga_ 5-6-95
Wallace Oenga          Date

_Leroy Oenga_ 5/6/95
Leroy Oenga          Date

_Jennie Oenga_ 5-8-95
Jennie Oenga          Date

_Michael M. Delia_ 5-8-95
Michael M. Delia          Date

B _Jennifer CAPA, INC_ 5/8/95
B Jarvi          Date
Conservator for Jennie Oenga

_Georgene Shugluk_ May 6, 1995
Georgene Shugluk          Date

ACKNOWLEDGMENTS

STATE OF ALASKA          )
                         ) ss.
Second Judicial District )

The foregoing instrument was acknowledged before me this 6 day of May 1995 by Wallace Oenga who personally appeared before me and executed the foregoing instrument of his own free will.

_____
NOTARY PUBLIC FOR ALASKA
My commission expires: 2/24/96

STATE OF ALASKA          )
                         ) ss.
Second Judicial District )

The foregoing instrument was acknowledged before me this 6 day of May 1995 by Leroy L. Oenga, Sr., who personally appeared before me and executed the foregoing instrument of his own free will.

_____
NOTARY PUBLIC FOR ALASKA
My commission expires: 2/24/96

BOOK 79 PAGE 226
Barrow Recording District
985  1472

STATE OF ALASKA          )
                         ) ss.
Second Judicial District )

The foregoing instrument was acknowledged before me this 6th day of MAY , 1995 by Georgene Shugluk, who personally appeared before me and executed the foregoing instrument of her own free will.

NOTARY PUBLIC FOR ALASKA
My commission expires: 7/2/95

STATE OF ALASKA
Fourth (4) 5/8/95          ) ss.
~~Second~~ Judicial District )

The foregoing instrument was acknowledged before me this 8 day of May , 1995 by Michael Delia, who personally appeared before me and executed the foregoing instrument of his own free will.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

NOTARY PUBLIC FOR ALASKA
My commission expires: 7/29/97

STATE OF ALASKA          )
                         ) ss.
Fourth Judicial District )

The foregoing instrument was acknowledged before me this 8 day of May , 1995 by Jennie Oenga, who personally appeared before me and executed the foregoing instrument of her own free will.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

NOTARY PUBLIC FOR ALASKA
My commission expires: 7/29/97

STATE OF ALASKA          )
                         ) ss.
Fourth Judicial District )

The foregoing instrument was acknowledged before me this 8 day of May , 1995 by B Jarvi, who personally appeared before me and executed the foregoing instrument of her own free will, and in her capacity as conservator for Jennie Oenga.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

NOTARY PUBLIC FOR ALASKA
My commission expires: 7/29/97

Page 4

OOK _79_ PAGE _227_
Barrow Recording District

FOR THE LESSEE

_Al E. Bolea_ _5/10/95_
Al E. Bolea, Manager          Date
Greater Pt. McIntyre Area


ACKNOWLEDGMENT

STATE OF ALASKA          )
                         ) ss.
_THIRD_ Judicial District )

    The foregoing instrument was acknowledged before me this _10 7h_ day of
_MAY_ , 1995, by Al E. Bolea, the Manager of Greater Pt. McIntyre Area, BP
Exploration (Alaska), Inc., on behalf of the Corporation.

                         _Marcia R. Davis_
                         NOTARY PUBLIC FOR ALASKA
                         My commission expires: _2-28-96_

FOR THE SECRETARY OF INTERIOR:

The within Lease Amendment is hereby approved, pursuant to the authority delegated by 209 DM 8
dated November 17, 1981, Secretary's Order No. 3150 dated May 11, 1992, as amended March 5,
1993, and 10 BIAM Bulletin 13, dated November 19, 1992, as amended April 8, 1993, and the
Addendum to 10 BIAM 3, dated January 17, 1989.


_Samuel Demientieff_          _5-11-95_
Samuel Demientieff, Superintendent    Date
Bureau of Indian Affairs
Fairbanks Agency

```
Return to:
Stu Hirsh
BP Exploration (Alaska) Inc.
P.O. Box 196612
Anchorage, AK  99519-6612
```

95-920

985

RECORDED - FILED 3100
BARROW REC. DIST.
DATE _10/14_ , 19 _95_
TIME _11:42_ A M
Requested by _BP_
Address _Exploration_

1472

BUREAU OF INDIAN AFFAIRS
JUNEAU AREA OFFICE

95 MAY 16 AM 7:21

AK TITLE SERVICES CENTER
RECORDED

# ATTACHMENT E

## BIA Lease F-89-01 (Oenga) Royalty Calculation

| A Year | B Niakuk Pool Production | C Price/Barrel | D $ Niakuk Pool | E Collected by US for the Oenga's | F 12.5% Subsurface Royalty Alaska | G 4.17% Royalty | H 4.17% Royalty Less Amount Collected | I 2.5% Royalty | J 2.5% Royalty Less Amount Collected |
|---|---|---|---|---|---|---|---|---|---|
| 1994 | 3,383,208 | $14.61 | $49,428,699 | $80,640 | $6,178,587 | $2,061,177 | $1,980,537 | $1,235,717 | $1,155,077 |
| 1995 | 7,043,658 | $14.62 | $102,978,280 | $80,640 | $12,872,285 | $4,294,194 | $4,213,554 | $2,574,457 | $2,493,817 |
| 1996 | 10,936,851 | $18.46 | $201,894,269 | $80,640 | $25,236,784 | $8,418,991 | $8,338,351 | $5,047,357 | $4,966,717 |
| 1997 | 10,264,904 | $17.23 | $176,864,296 | $80,640 | $22,108,037 | $7,375,241 | $7,294,601 | $4,421,607 | $4,340,967 |
| 1998 | 10,024,720 | $10.87 | $108,968,706 | $80,640 | $13,621,088 | $4,543,995 | $4,463,355 | $2,724,218 | $2,643,578 |
| 1999 | 9,356,945 | $15.56 | $145,594,064 | $80,640 | $18,199,258 | $6,071,272 | $5,982,275 | $3,639,852 | $3,550,855 |
| 2000 | 6,997,392 | $26.72 | $186,970,314 | $88,997 | $23,371,289 | $7,796,662 | $7,707,666 | $4,674,258 | $4,585,261 |
| 2001 | 6,627,597 | $21.84 | $144,746,718 | $88,997 | $18,093,340 | $6,035,938 | $5,946,941 | $3,618,668 | $3,529,671 |
| 2002 | | | | | | | | | |
| 2003 | | | | Board of Indian Appeals | | | | | |
| 2004 | | | | | | | | | |
| 2005 | | | | | | | | | |
| 2006 | | | | | | | | | |
| 2007 | | | | Injunctive Relief | | | | | |
| 2008 | | | | | | | | | |
| 2009 | | | | | | | | | |
| Total | 64,635,275 | | $1,117,445,348 | $670,191 | $139,680,668 | $46,597,471 | $45,927,280 | $27,936,134 | $27,265,943 |

Column B – Niakuk Pool Production figures are from the Alaska Oil and Gas Conservation Commission. All or nearly all of this Niakuk Pool Oil was produced through BPX production facility on the Oenga Heir's Heald Pt. allotment.

Column C – Price per Barrel figures are from the United States Department of Energy (DOE).

Column D – Niakuk Pool production of Column B multiplied by the annual price of Column C.

Column E – Reflects money collected by the US and paid to Andrew Oenga and his Heirs.

Column F – Alaska 12.5% subsurface royalty – Niakuk Pool.

Column G – 4.17 % Royalty calculated by taking that percentage of the amount in Column D

Columns G and H – Royalty amounts less amount collected.

Column I – 2.5 % Royalty calculated by taking that percentage of the amount in Column D.