## ALASKA BAR ASSOCIATION
## FEE ARBITRATION

LEROY OENGA, JR.,        )
               Petitioner,      )
                               )
      v.                           )
                               )
RAYMOND C. GIVENS,        )
               Respondent.     )
                               )    ABA No. 2021F012

### GIVENS' MOTION TO DISMISS AND RESPONSE TO OENGA'S PETITION FOR FEE ARBITRATION

This memorandum is filed on behalf of Raymond C. Givens, pursuant to Alaska Bar Rule 40(d), in response to the allegations of the petition for fee arbitration, dated August 10, 2021, filed by Leroy Oenga, Jr. Mr. Givens hereby moves to dismiss that petition. In the alternative, this memorandum argues for limited jurisdiction of the fee arbitration panel, and it responds to the allegations of Mr. Oenga's petition. The memorandum supplements letters written by Mr. Givens' undersigned counsel to Alaska Bar Counsel, dated October 7 and October 8, 2021.

This memorandum makes the following arguments: First, *res judicata* bars Mr. Oenga's petition for fee arbitration, and accordingly that petition should be dismissed. Second, and in the alternative, any hearing before the fee arbitration panel should be limited to a determination of whether Mr. Givens' fee is fair and reasonable, with the other issues to be decided by the federal district court. Third, without waiving the above arguments, each of the allegations in Leroy Oenga, Jr.'s, petition is without merit. Finally, this memorandum lists, and provides a

Law Offices of
**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

link to, the documents supporting Mr. Givens' arguments herein. These points are discussed in more detail below.

## I. *RES JUDICATA* BARS OENGA'S PETITION

Leroy Oenga, Jr., has sought to invoke the Alaska Bar Association's fee arbitration jurisdiction without fully informing the Bar of the federal probate of the estate of Leroy Oenga, Sr., and of Leroy Oenga, Jr.'s, participation therein. Following a formal adjudicative hearing in that proceeding, a federal administrative law judge issued a final decision approving Mr. Givens' claim for the same attorney's fee now challenged by Leroy Oenga, Jr.'s, petition. That decision approved payment of Mr. Givens' fee, under the terms of the Contingency Fee Contract, as amended, between Mr. Givens and the Oenga heirs, both from a lump-sum settlement regarding past rents and trespass and from dramatically increased annual future rents paid for the subject Native allotment.

Leroy Oenga, Jr., was a party to that probate proceeding and was represented by independent counsel. There, Mr. Oenga did not oppose, but instead supported, Mr. Givens' fee claim. Doing an about face, Mr. Oenga now challenges that claim. Mr. Oenga's instant petition for fee arbitration seeks to relitigate what was litigated and finally decided earlier.

*Res judicata* bars Mr. Oenga's instant petition for fee arbitration. Accordingly, Mr. Givens respectfully moves that Bar Counsel dismiss that petition, under Alaska Bar Rule 36(a)(4).

### A. Legal Standard

*Res judicata* precludes the relitigation of a matter that has been resolved by an earlier adjudicative decision. "*Res judicata* consists of both claim preclusion and issue preclusion." *Dixon v. Pouncy*, 979 P.2d 520, 523 (Alaska 1999). Both are applicable here.

GIVENS' MOTION TO DISMISS AND RESPONSE TO OENGA'S PETITION FOR FEE ARBITRATION
*Oenga v. Givens*, ABA No. 2021F012

Case 3:21-cv-00008-HRH   Document 56-1   Filed 12/17/21   Page 2 of 25
Exhibit 1
Page 2 of 25

Law Offices of
**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

Law Offices of
**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

Claim preclusion "prevents a party from suing on a claim which has been previously litigated to a final judgment by that party . . . *and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action*." *McElroy v. Kennedy*, 74 P.3d 903, 906 (Alaska 2003) (emphasis added, internal quotation marks and citation omitted). "[A] final judgment in a prior action bars a subsequent action of the prior judgment was (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action." *Id.* (internal quotation marks and citation omitted). *See also Semtek International, Inc. v. Lockheed Martin Corporation*, 531 U.S. 497, 509 (2001) (federal courts are to apply state law regarding claim preclusion in federal diversity actions).

Issue preclusion "bars the relitigation of issues actually determined in [earlier] proceedings." *Allstate Insurance Company v. Kenick*, 435 P.3d 938, 944 (Alaska 2019) (brackets in original, internal quotation marks and citation omitted.) "Issue preclusion prohibits a party from relitigating an issue of fact if the following four factors are met: (1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved in the first action by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment." *Id. See also Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) ("a federal court sitting in diversity must apply the res judicata law of the state in which it sits").

Claim preclusion and issue preclusion apply to matters decided not only by a court but also by an administrative tribunal. "[A] valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same

exceptions and qualifications, as a judgment of a court." *Matanuska Electric Association v. Chugach Electric Association, Inc.*, 152 P.3d 460, 466 (Alaska 2007) (internal quotation marks and citation omitted). "In Alaska, as in most jurisdictions, issue preclusion may apply to administrative adjudications." *Johnson v. Alaska State Department of Fish & Game*, 836 P.2d 896, 906 (Alaska 1991). *See also Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481-82 (1982) (federal courts give the same preclusion effect to issues decided by state administrative agencies as the state itself would).

Both claim preclusion and issue preclusion apply to parties to the prior proceeding who had the opportunity to litigate or contest the claim or issue, even if they did not to do so. The Alaska Supreme Court often relies on the *Restatement (Second) of Judgments* in analyzing the preclusive effect of a prior decision. *See, e.g., Sykes v. Lawless*, 474 P.3d 636, 643 (Alaska 2020). *Restatement (Second) of Judgments* § 34 (Parties to an Action) states, in pertinent part, as follows:

> (1) A person who is named as a party to an action and subjected to the jurisdiction of the court is a party to the action.
>
> (2) A party is bound by and entitled to the benefits of the rules of res judicata *with respect to determinations made while he was a party*, except as stated in §§ 35 to 38.[1]

(Emphasis added.) Comment *a.* to section 34 states, in pertinent part, as follows:

> The *opportunity to litigate* is accorded to persons who are parties. A person becomes a party to an action by being designated as such and becoming subject to the jurisdiction of the court. A plaintiff subjects

---

[1]    None of those exceptions apply here. They are as follows: § 35 (Incapacity of a Party); § 36 (Party Appearing in Different Capacities); § 37 (Nominal Parties); and § 38 (Parties Aligned on the Same Side).

Law Offices of
**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

himself to the jurisdiction of the court by commencing the action. Other parties may subject themselves to the court's jurisdiction by making an appearance or participating in the action in a manner that has the effect of an appearance.

(Emphasis added.) Comment *b.* to that section states, in pertinent part:

A person who becomes a party to an action is bound by the rules of claim preclusion (merger and bar) *as to all claims of which fair notice is given at the time he was made a party, which are thereafter asserted while is a party, <u>or</u> which are in immediate furtherance of claims so asserted.*

(Emphasis and underlining added.)

## B. The Administrative Adjudication of Givens' Fee Claim

Leroy Oenga, Sr., died on March 1, 2012.[2] In his will, Leroy Oenga, Sr., gave his interest in the subject Native allotment to his son, Leroy Oenga, Jr., who is the petitioner herein.[3] Because the allotment was restricted property, held in trust under federal law by the United States, it was probated by the United States Department of the Interior, Office of Hearings and Appeals, Probate Hearings Division. *In the Matter of the Estate of: Leroy Oenga Sr.*, PROBATE P000102729IP. *Id.* The probate proceeding was assigned to federal Administrative Law Judge ("ALJ") James Lee Yellowtail.[4]

Leroy Oenga, Jr., was the putative heir of his father's interest in the subject Native allotment. Under his will, Leroy Oenga, Sr., gave to Leroy Oenga, Jr., his entire interest in the allotment and all income derived from it.[5] Leroy Oenga, Jr., was a party in the probate

---

[2]    Document Number ("Doc. No.") 66, at 1. For the documents cited herein, *see* the attached list of documents and the referenced Dropbox link.

[3]    *Id.*, at 2.

[4]    Doc. No. 46, Notice of Initial Hearing, at 1.

[5]    Doc. No. 46.

GIVENS' MOTION TO DISMISS AND RESPONSE TO
OENGA'S PETITION FOR FEE ARBITRATION
*Oenga v. Givens*, ABA No. 2021F012                                                            Page 5 of 22

Law Offices of
**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

proceeding,[6] he submitted an affidavit in that proceeding,[7] and he was represented there by independent counsel.[8]

On July 31, 2012, Mr. Givens filed a claim in the probate proceeding, pursuant to 25 C.F.R. § 15.302-15.305, and 43 C.F.R. § 30.140-30.148, for payment of his attorney's fee from the estate of Leroy Oenga, Sr., under the terms of a Contingency Fee Contract, as amended, between Mr. Givens and the Oenga heirs.[9] Included was a claim for payment of the fee both from a lump-sum settlement for past annual rents and trespass and from dramatically increased future annual rents, including future rent for calendar year 2013, which came due after the 2012 settlement.[10]

Accompanying Mr. Givens' claim were his affidavit and a memorandum in support.[11] He argued that his fee was reasonable, under the eight factors set out in Rule 1.5(a) of the Model Rules of the American Bar Association. Those factors, which are nearly identical to those set out at Alaska Bar Rule 35(a), are as follows:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

---

[6]  Doc. No. 46.

[7]  Doc. No. 50.

[8]  Doc. No. 60.

[9]  Doc. No. 47.

[10]  Doc. No. 46, at 6-7.

[11]  Doc. Nos. 48 and 49.

GIVENS' MOTION TO DISMISS AND RESPONSE TO
OENGA'S PETITION FOR FEE ARBITRATION
*Oenga v. Givens,* ABA No. 2021F012

Page 6 of 22

Law Offices of
**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

Law Offices of
**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_5_fees/

The reasonableness of Mr. Givens' fee was supported by an affidavit of Michael J. Schneider, an experienced and respected attorney in Alaska.[12] Additionally, Mr. Givens filed several supplemental affidavits and memoranda addressing, *inter alia*, the calculation of the fee owed to him from annual rents for calendar years 2011, 2012, and 2013.[13]

Mr. Givens' fee claim was decided by ALJ Yellowtail following a formal administrative adjudication, under the detailed regulations of the Department of the Interior, 43 C.F.R. Parts 4 and 30.[14] Those regulations contained provisions for written discovery.[15] The parties had the

---

[12]     Doc. No. 53.

[13]     Doc. Nos. 54-58, 61-63.

[14]     *Id.*

[15]     43 C.F.R. §§ 30.215-30.223.

GIVENS' MOTION TO DISMISS AND RESPONSE TO
OENGA'S PETITION FOR FEE ARBITRATION
*Oenga v. Givens,* ABA No. 2021F012                                    Page 7 of 22

Law Offices of
**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

right to take depositions under oath, with the right of cross-examination.[16] The regulations set out the procedure for filing pleadings and documents,[17] and they provided for the issuance of subpoenas to compel testimony.[18] An evidentiary hearing was held on Mr. Givens' fee claim under adjudicative rules for the submission of evidence and testimony under oath.[19] The parties had the right of cross examination of witnesses at that hearing.[20] ALJ Yellowtail relied on the Federal Rules of Evidence for guidance in his conduct of the hearing.[21] Following the hearing, a transcript was prepared.[22]

Leroy Oenga, Jr.'s, interests in the probate proceedings were clearly adverse to those of Mr. Givens. That is because any fee approved to be paid to Mr. Givens would reduce the funds paid to Leroy Oenga, Jr., from settlement proceeds and past annual rents received and held for him, as the putative heir of his father's estate.[23] Notwithstanding this, Leroy Oenga, Jr., did not object in the probate proceeding to payment of Mr. Givens' fee, under the terms of the Contingency Fee Contract, as amended, including from the lump-sum settlement for the past

---

[16]    43 C.F.R. § 30.217(b).

[17]    43 C.F.R. §§ 4.20-4.31.

[18]    43 C.F.R. §§ 4.26, 30.224.

[19]    43 C.F.R. §§ 30.224-30.234.

[20]    Administrative Procedure Act, 5 U.S.C. § 556(d); *Estate of Lucy Buffalo Little Coyote, aka Thyra Redbird*, 17 IBIA 31, 35 (Jan. 10, 1989).

[21]    43 C.F.R. § 30.227(e).

[22]    43 C.F.R. § 30.226

[23]    Doc. No. 66, at 4.

GIVENS' MOTION TO DISMISS AND RESPONSE TO
OENGA'S PETITION FOR FEE ARBITRATION
*Oenga v. Givens*, ABA No. 2021F012

Law Offices of
WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

rents and trespass and from future rents. Instead, Leroy Oenga, Jr., signed an affidavit supporting Mr. Givens' fee claim.[24] There, Leroy Oenga, Jr., stated:

> **7. Desire That Costs and Fees Due from Lump Sum Settlement Be Paid Through Probate Proceedings** – As the putative heir of the Allotment, it is my desire that the sum of $1,212,180.00 be paid to Givens through this probate proceeding in satisfaction of the costs and fees due from the Estate's 24% interest in lump sum settlement payment of the Oenga Claims, so that any interest I may inherit in the Allotment is free and clear of any obligation for these fees and costs.

> **8. Fees Due on Future Rents** – My understanding is that under the Settlement Agreement and resulting leases, annual rents are to be paid to interest holders in the Allotment by BPX through the BIA in the amount of $650,000/yr., plus an annual CPI-based inflation adjustment. These rents are to be paid each year for up to 25 years in October for the upcoming year under the current lease. The original Fee Agreement called for payment of a 30% contingency fee for up to 25 years on all future ren *increases* over what rents had been when the original Fee Agreement was entered into. [$88,997/yr. original rent]. The amendment to the Fee Agreement signed by Leroy Oenga Sr. and all other interest holders in the Allotment reduced slightly the actual amount of fees to be paid each year and simplified the fee calculation by setting the annual fee at 25% of the entire yearly rent. [$650,000 current rent – $88,997 initial rent = $561,003 rent increase X 30% contingent fee= $168,300 fee due under original Fee Agreement **vs.** $650,000 current rent X 25% contingent fee = $162,500 fee under amended Fee Agreement].

> **9. Request for Probate to Pay Costs and Fees Due on any Rents Received During Probate** – As the putative heir of the Allotment, it is my desire that the 25% contingency fee due Givens under the Fee Agreement on all future rents collected for the Estate during the time of probate be paid to Givens through this probate so that any interest I inherit in the Allotment is free and clear of any obligation

---

[24]     Doc. No. 50.

GIVENS' MOTION TO DISMISS AND RESPONSE TO
OENGA'S PETITION FOR FEE ARBITRATION
*Oenga v. Givens*, ABA No. 2021F012             Page 9 of 22

Case 3:21-cv-00008-HRH   Document 56-1   Filed 12/17/21   Page 9 of 25   Exhibit 1
Page 9 of 25

of these fees and costs due on rents collected during the time the Estate was in probate.

(Italics and brackets in original.)

Following the hearing, on September 27, 2013, ALJ Yellowtail issued a decision in the probate proceeding approving Mr. Givens' fee claim.[25] There, ALJ Yellowtail wrote:

> A claim has been filed against this estate by Raymond C. Givens based on a contingency fee contract executed by the Decedent. The claim is for legal services rendered pursuant to the contingency fee contract in litigation styled as Wallace Oenga, et al. vs. United States of America and Intervenors BP Exploration, et al., United States court of Claims Case No. 06-0491-NBF. The claim is valid because the contracted services were rendered and a substantial settlement was obtained for the plaintiffs including the Decedent's estate. The Decedent's non-trust estate is negligible and insufficient to pay any portion of the claim. There was no objection to approval of the claim in the amount of $1,251,821.00. The claim is therefore approved for payment in the amount of $1,251,821.00 from trust or restricted funds administered by the United States on behalf of the Decedent's estate.[26]

The fee approved by ALJ Yellowtail included payment to Mr. Givens, pursuant to the Contingency Fee Contract, as amended, from the lump-sum settlement for past rents and trespass and from future rents. No administrative appeal was taken from the ALJ's decision, and it became the final decision of the Department of the Interior.[27] 43 C.F.R. § 30.238. No appeal of the Department's final decision was filed with the federal district court, and that decision became final for all purposes. 28 U.S.C. § 2401(a). Accordingly, ALJ Yellowtail's decision was a final judgment on the merits of Mr. Givens' fee claim, regarding past rents and

---

[25]     Doc. No. 66.

[26]     *Id.*, at 4. ALJ Yellowtail's approval of a fee of $1,251,821.00 included payment from future rent for calendar year 2013, paid into the probate after the 2012 settlement.

[27]     *Id.*

GIVENS' MOTION TO DISMISS AND RESPONSE TO
OENGA'S PETITION FOR FEE ARBITRATION
*Oenga v. Givens,* ABA No. 2021F012                                    Page 10 of 22

trespass and future rents, by an adjudicative administrative tribunal with jurisdiction over the matter.

**C.** ***Res Judicata* Bars Oenga's Petition for Fee Arbitration, Requiring Its Dismissal**

As noted above, Mr. Givens' claim in the probate proceeding was for payment of his fee, under the Contingency Fee Contract, as amended, from the lump-sum settlement regarding past rents and trespass and from future rents. The claim was decided favorably in ALJ Yellowtail's decision. That decision satisfies the requirements of claim preclusion, under *McElroy v. Kennedy*, *supra*. First, the decision was a final judgment on the merits. Second, the decision was issued by a tribunal of competent jurisdiction. Finally, both Mr. Givens and Mr. Oenga were parties to that proceeding. Even though Mr. Oenga did not contest Mr. Givens' fee claim there, their interests were adverse, and Mr. Oenga had every opportunity to challenge that claim. Under claim preclusion, Mr. Oenga is barred from now relitigating Mr. Givens' fee claim. Further, Mr. Oenga is precluded from asserting any legal theory, cause of action, or defense that could have been, but was not, asserted in the federal probate proceeding. *Id.* Accordingly, Mr. Oenga is barred by claim preclusion from asserting the allegations in his petition for fee arbitration, which he could have made, but did not make, in the probate proceeding.

In the probate proceeding, Mr. Givens presented testimony and evidence supporting the reasonableness of his fee, under the terms of the Contingency Fee Contract, as amended, to be paid from the lump-sum settlement regarding past rents and trespass and from future rents. In his decision approving that fee, ALJ Yellowtail agreed. Accordingly, that decision also satisfies the requirements of issue preclusion regarding the reasonableness of Mr. Givens' fee, under *Allstate Insurance Company v. Kenick*, *supra*. First, and again, Leroy Oenga, Jr., was a party to

Law Offices of
WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

the first action, with interests adverse to those of Mr. Givens. Second, the issue that is precluded from relitigation—the reasonableness of Mr. Givens' fee—is identical to the issue decided in the first action. Third, the issue was resolved in the first action by a final judgment on the merits. Finally, the determination of the issue was essential to the final judgment regarding Mr. Givens' fee claim. Again, issue preclusion applies even though Mr. Oenga did not challenge the reasonableness of Mr. Givens' fee in the probate proceeding.

For the above reasons, *res judicata* bars Mr. Oenga's petition for fee arbitration. Mr. Oenga is precluded from relitigating the claim and the issues decided by ALJ Yellowtail. Further, Mr. Oenga is precluded from presenting defenses and allegations regarding Mr. Givens' fee claim that could have been, but were not, asserted in the probate proceeding. Accordingly, Mr. Givens requests that Bar Counsel dismiss Mr. Oenga's petition with prejudice, under Alaska Bar Rule 36(a)(4).

In the alternative, Bar Counsel should dismiss the petition without prejudice, permitting the federal district court to decide the preclusive effect of the earlier federal administrative adjudicative decision, pursuant to the court's retention of jurisdiction in its order at Docket No. 55, in *Givens v. Leroy Oenga, Jr.*, United States District Court for the District of Alaska, Case No. 3:21-cv-0008-HRH.

## II. THE PANEL'S JURISDICTION IS LIMITED TO DETERMINING WHETHER GIVENS' FEE IS FAIR AND REASONABLE

Without waiving the above argument for dismissal, and in the alternative, Mr. Givens requests that Bar Counsel determine, under Alaska Bar Rule 36(a)(4), that the jurisdiction of a fee arbitration panel is limited to a determination of whether Mr. Givens' fee is fair and

GIVENS' MOTION TO DISMISS AND RESPONSE TO
OENGA'S PETITION FOR FEE ARBITRATION
*Oenga v. Givens*, ABA No. 2021F012

reasonable. The other allegations in Mr. Oenga's petition should be decided by the federal district court. The limited jurisdiction of the panel is made clear from the following:

First, the fee arbitration panel is not a tribunal of general jurisdiction. Instead, the panel's jurisdiction is limited to that set out by the Alaska Supreme Court, at Part III of the Alaska Bar Rules. Bar Rule 34 addresses the general principles and jurisdiction of the panel. Bar Rules 36 through 42 address the procedures to be followed in fee arbitration. The substantive standard to be applied by the panel is set out at Bar Rule 35(a), which states eight factors to apply to assess whether a fee is "reasonable." Although Bar Rule 34(h)(1)(A) states that the fee arbitration's executive committee can determine that a dispute constitutes a "complex arbitration" because of the legal or factual issues presented, that cannot be read to give authority to the panel to adjudicate the legal and factual questions of federal Indian law, and the rights, duties, and relationship of American Indians and Alaska Natives, the federal courts, and various federal agencies that are at issue in this case, as filed with the federal court. Instead, the panel has authority to decide only the legal and factual issues, whether simple or complex, that bear on the reasonableness of the fee.

Second, the limited jurisdiction of the fee arbitration panel is reflected in the Bar's form Petition for Arbitration of Fee Dispute. The substantive provision of that form is paragraph 12, which asks the petitioner to state why he or she believes "the fee was excessive." This form question demonstrates that the panel is not to adjudicate the legal and factual issues of federal Indian law, and the rights, duties, and relationship of American Indians and Alaska Natives, the federal courts, and various federal agencies that are at issue in this case, as filed with the federal court. Instead, the panel is to decide only if the fee is reasonable.

GIVENS' MOTION TO DISMISS AND RESPONSE TO
OENGA'S PETITION FOR FEE ARBITRATION
*Oenga v. Givens*, ABA No. 2021F012

Law Offices of
WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

Third, the federal district court's order granting a stay of the federal court action generally reserved issues other than the reasonableness of the fee, to be decided by that court after the fee arbitration panel has completed its work. The federal court order stated that following the arbitration, that court will take up any Indian law issues, or any other issues, that remain to be resolved.[28]

Finally, in his federal court pleadings, Mr. Oenga took the position that the fee arbitration panel should decide only whether Mr. Givens' fee is fair and reasonable.[29] Mr. Oenga is judicially estopped from now arguing for a more expansive role for the arbitration panel. *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) ("The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process.").

## III.   OENGA'S ALLEGATIONS ARE WITHOUT MERIT

Without waiving the above arguments, Mr. Givens responds briefly as follows to the allegations at paragraph 12 of Mr. Oenga's Petition for Arbitration of Fee Dispute. As will be shown by the documents and testimony to be presented by Mr. Givens at the fee arbitration hearing, if one is held, none of those allegations have merit. Mr. Givens reserves the right to supplement these responses in the future.

---

[28]     Federal court, Docket No. 55, at 7.

[29]     Federal court, Docket No. 52, at 7-8.

GIVENS' MOTION TO DISMISS AND RESPONSE TO
OENGA'S PETITION FOR FEE ARBITRATION
*Oenga v. Givens,* ABA No. 2021F012

Page 14 of 22

*(1) Leroy, Jr. never signed any agreement with Givens.*

Response: As a matter of law, Mr. Oenga inherited his interest in the Native allotment subject to the contractual promise of his father that Mr. Givens would be paid his fee from future rents, which promise ran with the land.

*(2) Givens is not a practicing attorney.*

Response: Although Mr. Givens has retired from practicing law, he is not foreclosed from collecting a fee that he earned before he retired.

*(3) Givens never represented Leroy, Jr.*

Response: *See* Mr. Givens' response above to allegation (1).

*(4) Leroy Sr.'s fee was satisfied through the Federal probate.*

Response: As noted above, in the federal probate of the estate of Mr. Oenga's father, ALJ Yellowtail issued a final decision approving Mr. Givens' fee claim, under the terms of the Contingency Fee Contract, as amended, from the lump-sum settlement for past rents and trespass and from future rents.

*(5) Givens has no right to receive fees from the existing lease, only the 1989 Lease.*

Response: Under the Contingency Fee Contract, as amended, Mr. Givens' fee is to be paid from rents received until 2036, and those rents were dramatically increased solely as a result of Mr. Given's efforts.[30] *See* response below to allegation (13).

*(6) The Amended Fee Agreement was procured by duress.*

---

[30]     Although the Contingency Fee Contract, as amended, stated that the fee would be paid from rents through 2038, the replacement Lease Agreement—with its much higher annual rents, arrived at as a result of Mr. Givens' efforts—terminates in 2036, and Mr. Givens has agreed that payment of his fee from annual rents will end on that date.

GIVENS' MOTION TO DISMISS AND RESPONSE TO
OENGA'S PETITION FOR FEE ARBITRATION
*Oenga v. Givens*, ABA No. 2021F012

Exhibit 1
Page 15 of 25

Response: This allegation is false. Instead, the Contingency Fee Agreement First Amendment simplified the method of calculating Mr. Givens' fee and slightly reduced that fee. *See* response below to allegation (13).

*(7) The fee agreement is an illegal encumbrance of restricted property and was not approved by the BIA.*

Response: This is an argument under 28 U.S.C. § 410, which raises issues of federal Indian law and the relationship of American Indians and Alaska Natives, the federal courts, and federal agencies. The argument was made by the U.S. Department of Justice in *Givens v. Wallace Oenga*, United States District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH. After extensive briefing there, the argument was rejected by the federal district court.

*(8) Givens has already received almost $7 million from this family, and by 2038 will have received almost $10 million from this family—approx. $2.3 million from Leroy Jr. and Sr. alone.*

Response: As a result of the lump-sum settlement and the payment of increased annual rents over the course of the lease, the Oenga heirs will receive approximately $33 million more than they would have received without Mr. Givens' efforts. Mr. Givens' fee will be approximately $9.6 million, which is only approximately 29% of the increased payments received by the Oenga heirs. Leroy Oenga, Jr., receives approximately $141,000 more in rent each year as a result of Mr. Givens' efforts. After payment of Mr. Givens' 25% fee, Mr. Oenga receives a net amount of approximately $114,000 more each year than what he would receive absent Mr. Givens' efforts.

GIVENS' MOTION TO DISMISS AND RESPONSE TO
OENGA'S PETITION FOR FEE ARBITRATION
*Oenga v. Givens*, ABA No. 2021F012

Page 16 of 22

Case 3:21-cv-00008-HRH   Document 56-1   Filed 12/17/21   Page 16 of 25

Exhibit 1
Page 16 of 25

Law Offices of
**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

*(9) The Amended Fee agreement was not supported by consideration.*

Response: Consideration for the amendments to the Contingency Fee Contract were not required because Mr. Givens agreed to a reduction of his fee in those amendments. *See* response below to allegation (13).

*(10) BP is no longer the lessee.*

Response: Hilcorp Alaska, LLC, as assignee of BP Exploration (Alaska), Inc., has assumed all rights and obligations of BP under the lease of the Oenga allotment.

*(11) The lease is the main income from Leroy Jr., a single father, and the other members of this family.*

Response: *See* Mr. Givens' response above to allegation (8).

*(12) The case was resolved on or about June, 2011 when the confidential settlement terms were signed between the attorneys for the oil companies (Jim Torgerson); the United States; and the Oengas (Mr. Givens). Even if Mr. Givens was precluded from taking on other clients during the time he litigated the Oenga's case in the Court of Claims, he was not precluded from accepting other employment after that case was resolved.*

Response: Mr. Givens' representation of the Oengas required substantial work, precluding the prospect of working for other clients, well after the confidential settlement terms were signed.

*(13) Even though the result for the Oenga family was favorable in the Court of Claims as against the United States, there was no lawsuit filed against the Oil Companies, and the money secured from the Oil Companies was from settlement prior to an action being filed against the oil companies. Thus, the "Contingency Fee Contract/First Amendment" was <u>not</u> a reduction in the fees charged to this family as opposed to the original 2003 fee agreement.*

Law Offices of
**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

Law Offices of
**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

Response: The oil companies formally intervened as party defendants in the CFC action that Mr. Givens filed on behalf of the Oenga heirs against the United States. The money secured from the oil companies was the result of settlement of both the appeal issues from the CFC decision and the ancillary administrative proceeds filed by Mr. Givens on behalf of the Oenga heirs.

Contrary to Mr. Oenga's allegations, under the Contingency Fee Contract, as amended, Mr. Givens is entitled to payment of his fee from the dramatically higher annual rents received during the term of the replacement Lease Agreement that resulted from the settlement of the CFC litigation and appeals and the ancillary administrative proceedings.[31] Further, the amendments to the Contingency Fee Contract resulted in Mr. Givens receiving less in attorney's fees. This can be seen from the following.

Paragraph 2 of the original Contingency Fee Contract between Mr. Givens and the Oenga heirs stated that Mr. Givens' fee would be based on any payments or increases in past and future rents received by the Oengas as a result of his efforts:

> Clients agree to pay attorney for professional services 30% of the "Gross Recovery" of any and all funds received in settlement without an action having been filed in any Court; 33 1/3% of the "Gross Recovery" of any and all funds recovered through arbitration, or received in settlement after filing an action in any Court but prior to trial; 35% of the "Gross Recovery" of any and all funds recovered through arbitration, settlement or judgment once trial begins; or 40% of said sums if said matter is settled or resolved upon appeal or following post-verdict proceedings, and said sums payable to attorney for professional services are to be a lien upon any sums received in settlement or payment of any said claim, or

---

[31]     Doc No. 31.

GIVENS' MOTION TO DISMISS AND RESPONSE TO
OENGA'S PETITION FOR FEE ARBITRATION
*Oenga v. Givens*, ABA No. 2021F012

upon any judgment recovered. "Gross Recovery" shall mean all of the following:

a.) The amount received as compensation for the leased premises or under the Lease Agreement for the time period from the date of this Agreement back to the effective date of the Lease, which is January 1, 1989. (Back payments.)

b.) The increase in lease payments under the Lease Agreement or extended term, from the date hereof and into the future, which are brought about through a modification, reformation, or cancellation of the Lease Agreement or otherwise.

c.) All compensation and or damages and fees and costs which the clients become entitled to, but which the clients would not be entitled to receive under the existing Lease Agreement as modified.
d.) The amount received in a sale of the subject leased premises less the amount set forth in the last appraisal of the subject property performed by the Bureau of Indian Affairs.

e.) Judgment or settlement amounts received from any governmental branch or agency.

f.) The parties understand that an appraisal is now being performed pursuant to the requirements of the Lease Agreement, as modified. In the event the appraised value is used for increasing payments due commencing November 1, 2002, and thereafter, as opposed to the "cost adjustment factor" (which has been historically used for any increase in rent) the recovery shall be the increase in those rents based upon appraisal.[32]

Mr. Givens and the Oenga heirs agreed in the Contingency Fee Contract First Amendment to a new paragraph 2, to simplify the formula for calculating his fee from future rents. There, the parties agreed as follows:

---

32      Doc. No. 2, at 1.

GIVENS' MOTION TO DISMISS AND RESPONSE TO
OENGA'S PETITION FOR FEE ARBITRATION
*Oenga v. Givens*, ABA No. 2021F012

Law Offices of
WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

Law Offices of
WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

The prior ¶2 be deleted in its entirety and a new version be inserted in its place so as to read:

"2.  Clients agree to pay attorney for professional services 35% of the $13.5 million Lump Sum Settlement Amount paid under the Settlement Agreement resolving *Oenga et al. v. United States et al.*, CFC #06-491L and 25% of annual rental on Alaska Native Allotment F-14632 *paid for both the 2012-2013 inclusive period and for the extended term period of 2014-2038 inclusive*. Clients shall direct that these payments for professional services shall be paid directly to Attorney by Lessee BP Exploration (Alaska), Inc. and/or the United States or any subdivision thereof from the funds due Clients at the same time the remaining funds due are paid to Clients. No fees shall be owed for the second possible extension term from 2039-2063 inclusive."[33]

The recitals section of the amendment included the following: "Whereas, the fees to be paid under the 35% and 25% contingencies in the below amendments are *slightly less* than the fee that would be due under the most reasonable applications of the original Contingency Fee Agreement sliding scale and formulas to the Lump Sum Agreement and future rents increases obtained."[34] Thus, the Contingency Fee Contract First Amendment made clear the following: (1) Mr. Givens is entitled to 25% of the annual rents through the term of the replacement Lease Agreement; and (2) the amendment had the effect of slightly reducing his fee.

Mr. Givens' agreed to further reduce his fee in the second amendment to the contingency fee contract, named the Fee/Cost Reduction Agreement, by being reimbursed for his costs "off the top" of the lump-sum settlement before he calculated his contingency fee.[35]

---

[33]    Doc. No. 34 (emphasis added).

[34]    *Id*. (emphasis in original).

[35]    Doc. No. 38.

GIVENS' MOTION TO DISMISS AND RESPONSE TO
OENGA'S PETITION FOR FEE ARBITRATION
*Oenga v. Givens*, ABA No. 2021F012

## IV.   DOCUMENTS SUPPORTING GIVENS' ARGUMENTS

Attached to this memorandum as Exhibit 1 is a list of documents supporting Mr. Givens' motion and arguments here. The documents listed there can be found at the following Dropbox link:

https://www.dropbox.com/sh/9p8kbrypqz31a0b/AACCLO_EP0D49Dj9vABJGbWaa?dl=0

Those documents are confidential, under Alaska Bar Rule 40(r).

Mr. Givens reserves the right to supplement this list in the future.

In the event that Mr. Oenga's petition is not dismissed, Mr. Givens will present testimony, and may present additional documents, at the fee arbitration hearing in support of the reasonableness of his fee.

## V.   CONCLUSION

For the reasons stated above, *res judicata* bars Mr. Oenga's petition for fee arbitration, requiring its dismissal, either with or without prejudice. In the alternative, the jurisdiction of the fee arbitration panel is limited to consideration of whether Mr. Givens' fee is fair and reasonable. Without waiving the above arguments, each of the allegations in Mr. Oenga's petition are without merit. The documents supporting the above are referenced herein.

Dated at Anchorage, Alaska this 17th day of November, 2021.

WINNER & ASSOCIATES, P.C.
Attorneys for Respondent Raymond C. Givens

By: _____
Russell L. Winner
ABA No. 7811149

GIVENS' MOTION TO DISMISS AND RESPONSE TO
OENGA'S PETITION FOR FEE ARBITRATION
*Oenga v. Givens*, ABA No. 2021F012

Page 21 of 22

Certificate of Service
I certify that on this 17th day of November, 2021,
a copy of this document was
____Faxed____Mailed____Hand-Delivered,__X__Emailed
to the following:

Rachel B. Lauesen
The Lauesen Law Team, LLC
521 W. 41st Ave., Suite 102
Anchorage, AK 99503
rachel@lauesenlaw.com

Carrie Sisson

Law Offices of
**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

GIVENS' MOTION TO DISMISS AND RESPONSE TO
OENGA'S PETITION FOR FEE ARBITRATION
*Oenga v. Givens*, ABA No. 2021F012

**EXHIBIT 1**

**LIST OF DOCUMENTS SUPPORTING GIVENS' MOTION TO DISMISS
AND RESPONSE TO OENGA'S PETITION FOR FEE ARBITRATION**

1.  Givens' brochure

2.  2003-10-31 Initial Fee Contract

3.  2008-12-22 Oenga Story, Maps, Data Package

4.  1989-01-01 Original Lease Agreement

5.  1993-07-29 1st Lease Amendment

6.  1994-01-17 2nd Lease Amendment

7.  1995-05-06 3rd Lease amendment

8.  2005-12-20 Tolling Agreement

9.  2010-04-08 Oegna Summary Spreadsheet

10. 2010-04-08 Spreadsheet Assumptions

11. 2006-06-30 Complaint

12. 2006-09-25 Answer to Intervenor - Defendants 1st Amended Complaint

13. 2006-10-05 Answer - United States

14. 2008-09-18 SJ Opinion

15. 2008 Full Page SOL SJ Slides

16. 2010-01-10 Measure of Damages Argument Powerpoint

17. 2010-02-12 Order - Cl 3 Measure of Damages

18. 2010-03-08 Discovery & Pre-Trial Order

19. 2010-04-08 Travel

20. 2010-12-21 Trial Decision (Unsealed)

21. 2011-02-08 Final Decision

22. 2011-02-08 Judgment

23. 2010-11-24 Givens' letter to Hudson - halt Raven production

Exhibit 1
Page 1 of 3

24. 2010-12-21 BP letter to BIA - Raven

25. 2010-12-29 BIA letter to BP - halt Raven

26. 2011-02-16 RCG Settlement Proposal

27. 2011-03-17 RCG Memo to Mediator

28. 2011-03-28 Oengas' Notice of Appeal

29. 2011-04-08 US Notice of Appeal

30. 2011-04-11 BP Notice of Appeal

31. 2011-03-14 Actuarial Analysis - Decision Tree Graphic

32. 2011-03-16 Settlement vs Appeal comparison table

33. 2011-06-23 Executed Confidential Term Sheet

34. 2011-08-05 1st Amended Fee Agreement

35. 2011-12-09 DOI Trinity letter to RCG Distribution plan-fees-costs Redacted

36. 2012-01-22 Ken Howard letter - Trinity costs & attorney fees

37. 2011-11-18 Email to Attorneys

38. 2012-05-24 2nd Fee Agreement - Fee Reduction Agreement

39. 2012-05-24 Signed [Oengas] Settlement Agreement

40. 2011-07-08 Executed Raven First Amend Lease

41. 2011-09-29 Executed Second Raven Amend

42. 2012-05-24 FINAL EXECUTED 2011 Lease Amendment

43. 2012-05-24 FINAL EXECUTED Replacement Lease

44. 2012-05-15 State Court Probate Order - Wallace signed Settlement Agreement

45. 2012-08-01 Certificate Service - Cover Letter

46. 2012-08-12 Notice of Initial Hearing with Attachments

47. 2012-07-31 R. Givens' Claim in Leroy Sr. probate

48. 2012-07-31 Affidavit of R. Givens in Leroy Sr. probate

49. 2012-07-31 Memorandum in Support of Claim

Exhibit 1
Page 2 of 3

50. 2012-06-05 Affidavit of Leroy Jr. with exhibits in Leroy Sr. probate

51. 2012-07-31 Affidavit B. Solomon

52. 2012-08-01 Leroy receipt mailing

53. 2012-08-03 Affidavit of M. Schneider in Leroy Sr. probate

54. 2012-08-17 CCD17 Calculation Worksheet Rents

55. 2012-08-17 CCD18 Deposit Notifications

56. 2012-08-17 Motion Restrict Disclosure

57. 2012-08-17 Supplemental Memorandum

58. 2012-08-17 RCG Supplemental Affidavit

59. 2012-08-20 Certificate of Service

60. 2012-09-11 Attorney Hompesch Entry of Appearance - Request Documents

61. 2012-09-21 Supplement to Givens Claim

62. 2012-10-03 Givens' 3rd Affidavit Claim 2013 Rents

63. 2012-11-29 Givens' 2nd Supplemental Affidavit

64. 2012-12-07 Estate L. Oenga Distribution Itemization

65. 2012-12-07 RCG's PowerPoint used at oral argument

66. 2013-09-27 ALJ Yellowtail's decision in Leroy Sr. probate