

United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
ALASKA REGION
3601 C Street, Ste. 1100
Anchorage, Alaska 99503-5947
1-800-645-8465

IN REPLY REFER TO:
Regional Director

Certified Mail-Return Receipt Requested
7014 1200 0000 7385 0714

Russell L. Winner
Winner & Associates
900 W. 5th Avenue, Suite 700
Anchorage, AK 99501

SUBJECT: Decision regarding automatic yearly payment of attorney's fees for rents received on Native Allotment F14632, Parcel B, under lease F-89-01

Dear Mr. Winner,

This decision is issued in response to your petition dated April 27, 2015, regarding your client, Raymond Givens, requesting the Bureau of Indian Affairs (BIA) and the Office of the Special Trustee (OST) to automatically pay annual payments for attorney's fees that Mr. Givens believes are owed to him from rental payments made by BP Exploration, Inc., under a lease on Native Allotment F14632, Parcel B. On June 18, 2015, the BIA received Petitioner's Request for Action pursuant to 25 C.F.R. § 2.8 and 5 U.S.C. § 706(1).[1] On June 26, 2015, the Regional Director sent a letter advising that a decision on the petition would be made by August 17, 2015. See 25 C.F.R. § 2.8(b).

The petition advances three separate bases for granting the automatic payments[2]: (1) OST is required by 25 C.F.R. § 115.101 to make automatic year payments to Mr. Givens from the Individual Indian Money (IIM) accounts of the Oenga heirs because they repeatedly direct the BIA and OST in writing to do so; (2) OST is required under 25 U.S.C. § 410 and 25 C.F.R. § 115.104 to make automatic yearly payments to Mr. Givens from these IIM accounts because a representative of the Secretary of the Interior has approved the attorney-fee agreement between

---

[1] Under the Administrative Procedure Act, a person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review. An action may be filed in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee acted or failed to act in an official capacity. See 5 U.S.C. § 702. As such, 5 U.S.C. § 706(1) is not authoritative under this petition.

[2] The agency is hesitant to define what petitioner meant by "automatic" payments but the BIA is interpreting "automatic" to mean when OST processes a "Third Party Payment" using Form OST 01-004 without requiring the IIM account holder to submit a newly signed form every year.

1

Mr. Givens and the Oenga heirs, under which they agreed to these yearly payments; and (3) BIA should approve the attorney-fee agreement now under 25 U.S.C. § 82 and OST should make automatic yearly payments to Mr. Givens from the Oenga heirs' IIM accounts under 25 C.F.R. § 115.104. In the alternative of automatic yearly payments from the Oenga heirs' IIM accounts, the petition requests the BIA to instruct BP to make its yearly rental payments into a trust account previously established by the OST, or into a similar account so Mr. Givens should be paid his fees directly from that account and the balance should be paid into the IIM accounts of the Oenga heirs.

BACKGROUND

Mr. Givens represented the Heirs of Andrew Oenga in litigation against the United States and several corporations.[3] The original Oenga heirs entered into a contingency fee contract with Mr. Givens on October 31, 2003.[4] In August 2001, the Oenga heirs signed an amendment to the fee contract, and in May 2012, the Oenga heirs signed a Fee/Cost Reduction Agreement. The BIA did not approve the original fee contract or any amended agreements in advance of Mr. Givens and the Oenga heirs signing them.[5] The 2012 agreement states "this fee distribution agreement does not affect the 25% contingent fee due Attorney from Clients on future rents due on Native Allotment F-14632 through 2038 under the Contingency Fee Contract, as amended...". It should be noted that the BIA and/or OST are not parties to any of the fee contracts/amendments signed between the Oenga heirs and Mr. Givens. Nor are there any specific instructions to the Oenga heirs about how to make the annual payments to Mr. Givens for his attorney fees for future lease payments until 2038.

When a settlement amount was finalized between the Heirs of Andrew Oenga and the United States and the various oil companies that were defendants in the litigation, a Special Deposit Account (SDA) was established by OST for the Oenga heirs. The settlement funds were to be held in this account while the parties sought to dismiss all pending judicial and administrative appeals and to calculate compensation for under-payments or rent, damages for unauthorized use of the allotment and alleged breaches of trust. The parties agreed that it was in the best interest of the Oenga heirs to use the SDA, rather than directly deposit the settlement proceeds into a BIA suspense account which was not an interest bearing account. After the calculations were made and proceeds from the settlement were disbursed to the Oenga heirs IIM accounts and the SDA was closed.

---

[3] The Heirs of Andrew Oenga include: Leroy Oenga, Sr., Wallace Oenga, Georgene Shugluk, Joseph Delia, Tony Delia, Jennie Miller and Michael Delia (Trinity Delia). The defendant corporations include: BP Exploration (Alaska), Inc., Chevron U.S.A. Inc., Conocophillips Alaska, Inc., Exxonmobil Alaska Productions, Inc., Forest Oil Corporation, and Kuukpik, Corporation.

[4] Since the initiation of the Oenga heirs' litigation, Michael Delia, Leroy Oenga, Sr., and Georgene Shugluk have passed away. Michael Delia passed away in March 2008 and Trinity Delia inherited an interest in Allotment F14632, Parcel B. Leroy Oenga, Sr. passed away in March 2012 and Leroy Oenga, Jr. inherited an interest in Allotment F14362, Parcel B, and Georgene Shugluk passed away in December 2013 and Vera Shugluk/Nungasuk and Ray Aguvluk will inherit an interest in Allotment F14362, Parcel B.

[5] In the petition, Mr. Winner advances the argument that the fee agreement contracts did not receive BIA approval because the BIA was a party to the suits filed by Mr. Givens. See Memorandum in Support of Petition of Raymond Givens for Automatic Yearly Payment of Attorney Fees, page 5. The fact that BIA was a defendant in the pending litigation did not preclude Mr. Givens from requesting approval of the fee contracts by an authorized representative of the BIA.

2

The annual lease payments are made to and are distributed by OST to each eligible allotment owners' respective IIM accounts. As such, it is the responsibility and legal control of the Oenga heirs to pay the annual attorney fees to Mr. Givens as signed by each person in the fee contracts/amendments. The United States, Department of Interior, BIA or OST are neither parties to the fee contracts nor responsible to ensure annual payments are made to Mr. Givens. The lease payments arrive annually in mid-October and based on the information provided in any valid OST Form 01-004, OST processes payments to third parties after the funds have been entered into the Oenga heirs' IIM accounts.

Leroy Oenga, Sr. was a signatory to Mr. Givens fee contracts/amendments in 2003 and 2011. Mr. Oenga passed away on March 1, 2012. The 2012 Fee/Cost Reduction Agreement was signed by Wallace Oenga as personal representative for the Estate of Leroy Oenga, Sr. The Department of Interior, Office of Hearings and Appeals, Probate Hearings Division held a hearing on December 7, 2012, to determine the validity of the decedent's will and to settle his trust and restricted property estate. See Probate No. P0000102729IP.[6] Mr. Givens filed two claims with the Estate of Leroy Oenga, Sr., for "costs and fees owed as the result of legal representation provided pursuant to a contingent contract regarding past rents and damages as to trust property" and "fee provided pursuant to a contingent contract regarding future rents." (Italics provided in original). See Claim for Payment of Costs & Fees from Trust Estate, Exhibit 8, page 1. Mr. Givens' claim requested payment on lump sum settlement for $1,212,180.00 for costs/fees for costs and legal services rendered in the recovery of past rents and damages regarding Leroy Oenga, Sr.'s 24% interest in Native Allotment F-14632 and $39,000.00 + CPI ($641.00) adjustment in attorney fees for future rent increases for the 2013 lease rent payment. $1,251,821.00.[7] At no time did Judge James Yellowtail make reference or approve the contingency fee contracts/amendments between the Oenga heirs and Mr. Givens but only verified that Mr. Givens' claim was valid "because the contracted services were rendered and a substantial settlement was obtained for the plaintiffs include the Decedent's estate." See In the Matter of the Estate of Leroy Oenga, Sr., Probate No P0001027291P, Decision, dated September 27, 2013, page 4.[8]

DISCUSSION

In 1824, Secretary of War John Calhoun created within the War Department, the Bureau of Indian Affairs. In 1849, Congress shifted the Indian Office from the Department of War to the newly created Department of the Interior. The Department of Interior (DOI) includes numerous bureaus and agencies. The BIA and OST are not part of the same bureau or agency under DOI. The organizational chart for DOI is located at http://www.doi.gov/whoweare/orgchart.cfm.

The BIA is the oldest bureau in DOI. The BIA currently provides services (directly or through contracts, grants, or compacts) to approximately 1.9 million American Indians and Alaska Natives. There are 567 federally recognized American Indian and Alaska Native tribes in the

---

[6] Under 43 C.F.R. Part 30, the Office of Hearings and Appeals probates the trust or restricted land or trust personalty owned by the decedent at the time of death. See 43 C.F.R. § 30.102.

[7] In Mr. Givens' claim, he does not request attorney's fees for future rents beyond 2013.

[8] Assuming arguendo, even if BIA found that Judge Yellowtail, approved the contingency fee contract/amendments in a probate decision in 2013, restrictions on an IIM account could only occur if "funds obligated under contractual arrangements approved in advance by the Secretary or his authorized representative." See 25 C.F.R. § 115.104. Petitioner's position does not meet the "advance" requirement under the federal regulation.

3

United States. The BIA is responsible for the administration and management of 55 million surface acres and 57 million acres of subsurface minerals estates held in trust by the United States for American Indians, Alaska Natives and tribes or in restricted fee status. The BIA mission is to "... enhance the quality of life, to promote economic opportunity, and to carry out the responsibility to protect and improve the trust assets of American Indians, Indian tribes, and Alaska Natives."

The OST was established by the American Indian Trust Fund Management Reform Act of 1994 (Public Law 103-412), OST was created to improve the accountability and management of Indian funds held in trust by the federal government. As trustee, DOI has the primary fiduciary responsibility to manage both tribal trust funds and IIM accounts. The purpose of OST is to provide oversight, reform and coordination of the policies, procedures, systems and practices used by various agencies to manage Indian trust assets. This effort is integrally related to DOI's goal of meeting its responsibilities to American Indians, Alaska Natives and tribes. The goals of OST include:
1.   to protect and preserve Indian trust assets and collect and accurately account for income due beneficiaries;
2.   to obtain agreement with all tribal and individual Indian/Alaska Native account holders on the balances in their trust accounts in a manner that is fair to both the Indian/Alaska Native community and the general public, does not impair or impede reform efforts, and does not result in reductions in Indian/Alaska Native programs; and
3.   to provide timely and responsive customer services to account holders.
The OST's website can be accessed at http://www.doi.gov/ost/

As such, each entity has its own mission, goal, and duties under statutes and regulations. Furthermore, the BIA does not proscribe the duties and responsibilities of OST.

Under the federal regulations 25 C.F.R. Part 2, Appeals from Administrative Actions, an appeal can be decided by the following officials: an Area Director, Assistant Secretary-Indian Affairs, Deputy to the Assistance Secretary-Indian Affairs; or the Interior Board of Indian Appeals.[9] See 25 C.F.R. § 2.4. In this petition, the Area Director (Regional Director) for the Alaska Region may issue a decision but only as it relates to programs under his authority. See 25 C.F.R. § 2.4(a).

DECISION
The BIA is without authority to direct OST to make automatic payments to Mr. Givens under the contingency fee contracts/amendments between Mr. Givens and the signatory Oenga heirs (Georgene Shugluk, Wallace Oenga as Personal Representative to Leroy Oenga, Sr., Wallace Oenga, Joseph Delia, Tony Delia as Guardian to Trinity Delia, a minor, Tony Delia, and Jennie Miller). If the Oenga heirs properly filed a Form OST 01-004 with OST that authorizes third

---

[9] Under 25 C.F.R. § 2.4(b), an official can decide an appeal when a decision by the Office of Indian Education Programs official but it was excluded from this decision because the present petition is not related to any Indian education program.

4

party payments to Mr. Givens, OST will process these requests without requiring a newly signed form each year.[10]

Contrary to petitioner's belief, the contingency fee contracts/amendments were not approved by a representative of Secretary of the Interior. Indeed, Judge Yellowtail, in the Probate No P000102729IP "approved" Mr. Givens' claim for $1,251,821.00 and nothing more. Furthermore, there is no valid argument why the BIA should approve the attorney-fee agreement presently because there is nothing petitioner would gain. Even if BIA made a retroactive approval of the fee agreement/amendments it would not change Mr. Givens' request for "automatic" payments from the Oenga heirs' IIM accounts. The OST process for payments to a third party would be the exactly the same.

Under federal statute, 25 U.S.C. § 82, payments shall not be paid to any agent or attorney by an officer of the United States under any such contract or agreement until such person shall have first filed with the Commissioner of Indian Affairs a sworn statement, showing each particular act of service under the contract, giving date and fact in detail, and the Secretary of the Interior and Commissioner of Indian Affairs shall determine therefrom whether the contract or agreement has been complied with or fulfilled. Mr. Givens is requesting the BIA to approve his fee contracts/amendments retroactively. While there are no cases addressing retroactive approval of contracts under 25 U.S.C. § 82, there are decisions under the sister statute, 25 U.S.C. § 81.[11] Under 25 U.S.C. § 81, a party sought retroactive approval of a contract with a tribe in Hattum dba Hattum Family Farms and Hattum Custom Farms v. Great Plains Regional Director, 36 IBIA 79 (March 20, 2001). In the appeal, Mr. Hattum requested review of the Regional Director's decision not to retroactively approve the contract. In affirming the decision not to retroactively approve the contract,, the Interior Board of Indian Appeals held that 25 U.S.C. § 81 was intended to protect tribes, not those doing business with tribes and to the extent that BIA had an obligation to review contracts under section 81, its obligation would be toward the tribe, not appellant. See 36 IBIA at 81. Therefore, if the BIA wanted to review these contracts/amendments, it would do so to protect the Oenga heirs, not Mr. Givens.

Creating an SDA is not a viable solution either. An SDA is a temporary account for the deposit of trust funds that cannot be immediately credited to the rightful account holders. In the present situation, the rightful account holders can be immediately credited for the annual lease payment. The IIM account holders are known and the correct deposit amount can be calculated. Therefore, an SDA is not needed. Indeed, using an SDA would cause further delay because it would create an extra step in processing the annual lease payment. The funds deposited into the SDA would be transferred in the respective IIM accounts and then, OST would process third party payments based on any OST 01-004 forms on file.[12] A temporary SDA account would not benefit petitioner but instead, create more steps in the process before he would receive payments from the IIM account holders.

---

[10] It should be noted that at any time, any IIM account holder can modify or rescind the OST 01-004 form which would allow all funds to remain with the IIM account holder. BIA or OST cannot require an IIM account holders to pay any debt that is not under its authority. See 25 C.F.R. § 115.104.

[11] This statute is similar to 25 U.S.C. § 82, except it applies to contracts and agreements with Indian tribes.

[12] While petitioner requests that OST pay him directly from the SDA, there is no authority to neither use an SDA nor make direct payments to him. The Oenga heirs, not BIA or OST, are legally responsible for Mr. Givens' annual attorney's fees based on the signed fee agreement/amendments.

5

In conclusion, the three separate bases for granting automatic payments are denied for the reasons stated above. For those Oenga heirs who have properly filed a Form OST 01-004 with OST that authorizes third party payments to Mr. Givens, OST will process these requests without requiring a newly signed form each year.

You have the right to appeal this decision to the Interior Board of Indian Appeals, Office of Hearings and Appeals, U.S. Department of the Interior, 801 N. Quincy Street, Suite 300, Arlington, Virginia, 22203, in accordance with the regulations contained 25 CFR Part 2- Appeals from Administrative Actions (copy enclosed). If an appeal to the Board is taken, your notice must be signed by you or your attorney and <u>must be mailed within thirty (30) days of the date you receive this decision</u>. It should clearly identify the decision being appealed. If possible, attach a copy of the decision. You must send copies of your notice of appeal to: (1) the Assistant Secretary – Indian Affairs, 4140 MIB, U.S. Department of the Interior, 1849 C Street, NW, Washington, D.C., 20240; (2) each interested party known to you; and (3) Trust Services, Alaska Region, 3601 C Street, Suite 1100, Anchorage, Alaska 99503.

Your notice of appeal sent to the Interior Board of Indian Appeals (Board) must certify that you have sent copies to these parties. If you file a notice of appeal, the Board will notify you of further appeal procedures.

If no appeal is timely filed, this decision will become final for the Department of the Interior at the expiration of the appeal period. No extension of time may be granted for filing a notice of appeal.

If you have any questions concerning your request, please contact Kathy Cline, Deputy Director of Native Services at (907) 271-4148, or Lynn Polacca, Deputy Regional Director, Trust Services at (907) 271-1572.

Sincerely,

Weldon B. Loudermilk
Regional Director


Kathy B. Cline, Superintendent
Bureau of Indian Affairs – Fairbanks Agency
U.S. Department of the Interior
101 12th Avenue, Room 166
Fairbanks, AK 99701

Glenda Miller
Office of the Special Trustee
U.S. Department of the Interior
3601 C Street, Suite 216
Anchorage, AK 99503

Lisa M. DeCora, Attorney-Adviser
Office of the Solicitor, Alaska Region
U.S. Department of the Interior
4230 University Drive, Suite 300
Anchorage, AK 99508

Wallace Oenga
P.O. Box 91058
Atqasuk, AK 99791

Joseph T. Delia
2231 N. Gunflint Trail
Wasilla, AK 99623

Tony A. Delia
660 Audrey Drive
Fairbanks, AK 99709

Leroy L. Oenga, Jr.
P.O. Box 201
Barrow, AK 99723

Vera G. Nungasak
P.O. Box 91075
Atqasuk, AK 99791

Ray D. Aguvluk
P.O. Box 91075
Atqasuk, AK 99791

Jennie M. Miller
1018 Dogwood #202
Fairbanks, AK 99709

Trinity K. Delia
660 Audrey Drive
Fairbanks, AK 99709