TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
REBECCA M. ROSS, Senior Attorney
LAURA BOYER, Trial Attorney
Indian Resources Section
STACY STOLLER, Attorney
Law and Policy Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Telephone: (202) 616-3148 (Ross)
Telephone: (202) 353-8596 (Boyer)
Telephone: (202) 353-0132 (Stoller)
Facsimile: (202) 353-1156
Email: rebecca.ross@usdoj.gov
Email: laura.boyer@usdoj.gov
Email: stacy.stoller@usdoj.gov

*Attorneys for the United States*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RAYMOND C. GIVENS,<br><br>    Plaintiff,<br><br>v.<br><br>LEROY OENGA, JR.,<br><br>    Defendant. | Case No. 3:21-cv-00008-HRH |

**UNITED STATES' AMICUS BRIEF
IN OPPOSITION TO PLAINTIFF'S MOTION
FOR PREJUDGMENT WRIT OF ATTACHMENT**

*Givens v. Oenga Jr..*    Case No. 3:21-cv-00008-HRH
United States' Amicus Brief in Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment

Case 3:21-cv-00008-HRH    Document 137    Filed 07/10/24    Page 1 of 18

# INTRODUCTION

Through his Motion for Prejudgment Writ of Attachment, ECF No. 121 ("Motion"),[1] Plaintiff Raymond Givens moves this Court for prejudgment seizure of $239,654.01 in trust funds held in an Individual Indian Money ("IIM") account maintained at the United States Treasury for the benefit of Defendant Leroy Oenga, Jr. Notably, Plaintiff's Motion does not attempt to directly seize the IIM account, reflecting his apparent recognition that any such seizure would be improper. *See*, *e.g.*, *Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 259-65 (1999) (equitable lien on Treasury account to recover judgment disallowed); *Kennerly v. United States*, 721 F.2d 1252, 1254-58 (9th Cir. 1983) (attachment of IIM account to satisfy debt violated account holder's due process rights). Plaintiff instead seeks to turn a "writ of attachment" into a vehicle to compel Defendant to disburse the assets Plaintiff seeks to "set aside" in a court registry or other similar account. In doing so, Plaintiff is flouting Congressional intention by seeking to use procedures that were designed to *protect* trust assets to try to *remove* those same safeguards pending the outcome of this case.

As more fully set forth below, *Amicus Curiae* United States respectfully urges the Court to deny Plaintiff's Motion for at least two reasons. First, the Motion improperly seeks an end-run around statutory and regulatory limitations designed to protect the trust

---

[1] Plaintiff also filed an amended proposed order, ECF No. 124-1, and an amended proposed writ, ECF No. 124-2.

1

*Givens v. Oenga Jr.*                                                                         Case No. 3:21-cv-00008-HRH
United States' Amicus Brief in Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment

Case 3:21-cv-00008-HRH    Document 137   Filed 07/10/24   Page 2 of 18

funds Plaintiff seeks to attach. Second, by seeking to compel the Defendant to act, the Motion effectively seeks mandatory preliminary injunctive relief against Defendant without demonstrating entitlement to such an extraordinary remedy. Specifically, Plaintiff has not shown that he would suffer irreparable harm, as is necessary to obtain such relief. Nor could he do so; Plaintiff's motion focuses on allegedly *past due* payments, which do not provide a basis for a claim of irreparable harm as this alleged injury could plainly be addressed through money damages. Indeed, it is actually the Defendant who faces irreparable harm here: if the Court grants the Motion and Defendant is required to disburse the IIM account funds, those funds will permanently lose their trust status and the benefits attendant to such status. This is because once disbursed, such funds cannot be redeposited back into the IIM account to be held in trust. *See* 25 C.F.R. § 115.702-703. Accordingly, *Amicus Curiae* United States respectfully requests that the Court deny Plaintiff's Motion.

## BACKGROUND

### I. Interior's Management of Indian Trust Funds

Through the passage of the American Indian Trust Fund Management Reform Act of 1994, Pub. L. 103-412, Congress created the Office of the Special Trustee for American Indians ("OST") within the United States Department of the Interior ("Interior") to improve the accountability and management of Indian trust funds held by the United States. In 2020, OST's trust fund management responsibilities were reassigned to a new bureau, the Bureau of Trust Funds Administration ("BTFA"). *See* BTFA,

2

*Givens v. Oenga Jr.*                                                      Case No. 3:21-cv-00008-HRH
United States' Amicus Brief in Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment

Case 3:21-cv-00008-HRH    Document 137    Filed 07/10/24    Page 3 of 18

https://bia.gov/btfa (last visited July 10, 2024); *see also* 25 U.S.C. § 5634 (requiring eventual transition of OST responsibilities to "other bureaus or agencies" within Interior). BTFA has the primary fiduciary responsibility to control, manage, and administer trust funds held in IIM accounts. BTFA, https://bia.gov/btfa (last visited July 10, 2024).

IIM accounts are "interest bearing account[s] for trust funds held by the Secretary that belong to a person who has an interest in trust assets." 25 C.F.R. § 115.002. Trust funds include money derived from the "use of trust lands, restricted fee lands, or trust resources," *id.*, including the leasing of allotted lands for oil and gas development, *see, e.g.*, 25 C.F.R. § 115.702.[2] A wide array of federal statutes, regulations, and procedures govern whether and to what extent BTFA can disburse trust funds from IIM accounts. *See, e.g.*, 25 U.S.C. § 410; 25 C.F.R. §§ 115.100-07; *id.* §§ 115.600-20; *id.* §§ 115.700-13. Interior, acting through BTFA and the Bureau of Indian Affairs ("BIA"), has a trust responsibility to manage and control the IIM accounts, 25 U.S.C. § 5601, including by providing adequate controls over disbursements of trust funds, *id.* § 162a(d)(2).

There are three types of IIM accounts: "unrestricted, restricted, and estate accounts." 25 C.F.R. § 115.002 (defining IIM accounts). An IIM account holder whose

---

[2] Restricted fee lands are lands for which title "is held by an individual Indian or a tribe and which can only be alienated or encumbered by the owner with the approval of the Secretary because of limitations contained in the conveyance instrument pursuant to federal law." 25 C.F.R. § 115.002. Interior manages restricted fee lands in the same manner as it manages trust lands. *See, e.g., United States v. Bowling*, 256 U.S. 484, 487 (1921); 25 C.F.R. § 212.3 (defining "Indian lands" subject to Interior's mineral leasing regulations as including both restricted fee and trust lands).

3
*Givens v. Oenga Jr.*                        Case No. 3:21-cv-00008-HRH
United States' Amicus Brief in Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment
Case 3:21-cv-00008-HRH    Document 137    Filed 07/10/24    Page 4 of 18

account is unrestricted can place or remove a voluntary hold on their IIM account at any time. *Id.* (defining "voluntary hold"). Trust funds deposited into an IIM account with a voluntary hold remain there until the account holder requests disbursement. *Id.* BTFA has no discretion to disburse funds from an IIM account that is on voluntary hold absent the account holder's request to do so. 25 C.F.R. § 115.101.

These restrictions on disbursements are grounded in the protections Congress put in place to protect trust assets. Specifically, Congress has prohibited the use of lease income derived from allotted lands to satisfy debts, absent "approval and consent of the Secretary of the Interior." 25 U.S.C. § 410 ("Section 410"). The Secretary has exercised this authority through regulations that enumerate the circumstances and establish procedures under which trust funds maintained in IIM accounts may be encumbered to satisfy debts. 25 C.F.R. §§ 115.600-620 (outlining encumbrance procedures); *id.* §115.002 (defining encumbrance as the "means to attach trust assets held by the Secretary with a claim, lien, or charge that has been approved by the Secretary"). Because an encumbered IIM account obligates a portion of the trust funds to a third party, specific administrative processes must be followed to protect the IIM account holder's due process rights. *Kennerly*, 721 F.2d at 1254-58; 25 C.F.R. §§115.600-620. For example, a third party seeking to collect damages stemming from a breach of contract may only encumber an IIM account to satisfy a debt if BIA approved the contract in advance, and the contract specifically identified IIM account funds as collateral, among other

4
*Givens v. Oenga Jr.*                                                  Case No. 3:21-cv-00008-HRH
United States' Amicus Brief in Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment
Case 3:21-cv-00008-HRH    Document 137    Filed 07/10/24    Page 5 of 18

requirements. 25 C.F.R. § 115.601(b)(2). If a third party cannot comply with these requirements, they cannot encumber an IIM account. *Kennerly*, 721 F.2d at 1254-58.

Interior may also permit third parties to recover against an estate, provided they timely file such claim and the Administrative Law Judge overseeing the probate proceeding approves the claim. 25 C.F.R. §§ 15.301-05; 43 C.F.R. §§ 30.140-48; *In the Matter of Estate of Leroy Oenga, Sr.*, Probate No. P000102729IP (Sept. 27, 2013).

Outside of these procedures, neither BIA nor BTFA has authority to encumber an otherwise unrestricted account. Any attempt to encumber an IIM account outside of these regulations could violate the account holder's due process rights or otherwise subject the United States to liability. *Kennerly*, 721 F.2d at 1254-58 (holding the United States breached its trust responsibility by distributing individual account funds to satisfy a debt without holding a hearing).

## II. Interior's Trust Management of Leasing Income

### A. Interior's Duties to IIM Account Holders

When a lessee of an allotment makes its required payments to Interior, it does so by depositing the payment into a secure account within the United States Treasury controlled by Interior. 25 C.F.R. § 115.002 (defining "Deposits"). BTFA is then required to distribute each beneficiary's share of such payment into their respective IIM account, also maintained at the United States Treasury, within twenty-four hours of receiving a lessee's payment, "or no later than the close of business on the next business day following the receipt of funds at a location with a designated federal depository." 25

5

*Givens v. Oenga Jr.*                          Case No. 3:21-cv-00008-HRH
United States' Amicus Brief in Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment

Case 3:21-cv-00008-HRH     Document 137     Filed 07/10/24     Page 6 of 18

C.F.R. § 115.708. BTFA has no discretion to delay or otherwise refuse to deposit each beneficiary's annual leasing income into their respective IIM account, as set out in Interior regulations. *Id*.

### B. Benefits of Retaining Leasing Income in Trust

IIM account holders receive tangible benefits from keeping their income in trust. Among other things, Interior is required to invest such income to generate interest on the beneficiary's behalf. 25 U.S.C. § 161; *id.* § 161a(b); 25 C.F.R. §§ 115.710-13. In connection with this responsibility, Interior is obligated to accurately account for and report on trust fund balances, including through an annual audit and other periodic statements to account holders. 25 U.S.C. ch. 42; 25 U.S.C. § 162a(d); 25 C.F.R. § 115.709. Additionally, Interior is required to provide adequate controls over the receipt and disbursement of trust income. 25 U.S.C. § 162a(d). This responsibility includes having procedures in place to protect funds from disbursement in the event the beneficiary's address or private bank information is unknown, 25 C.F.R. § 115.002 (defining "Administratively restricted account"); *id.* § 115.701 (describing such accounts); if the beneficiary is a minor, *id.* §§ 115.400-31; if the beneficiary is unable to manage their own affairs, *id.* § 115.104; or if the beneficiary dies, *id.* § 115.500-04.

For unrestricted IIM accounts for which a voluntary hold is in place, Interior will retain trust income in the IIM account until such time as the beneficiary authorizes a disbursement. 25 C.F.R. § 115.701; *id.* § 115.002 (defining "Voluntary hold" as an "unrestricted IIM account" for which the beneficiary has instructed BTFA to maintain

6
*Givens v. Oenga Jr.*      Case No. 3:21-cv-00008-HRH
United States' Amicus Brief in Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment
Case 3:21-cv-00008-HRH   Document 137   Filed 07/10/24   Page 7 of 18

trust income in such account "instead of having the trust funds automatically disbursed"). Once disbursed from the IIM account, trust funds cannot be redeposited back into trust except for certain limited circumstances not applicable here. 25 C.F.R. §§ 115.702-03.

Defendant is one of several beneficial owners of Restricted Fee Allotment F14632, Parcel B ("Allotment"). There is a voluntary hold on Defendant's unrestricted IIM account, so that any trust income that BTFA deposits into the account remains there until the Defendant instructs otherwise. Neither Section 410 nor the regulations implementing that Section permit the use of "money accruing from [the] lease [of] lands held in trust by the United States" for Defendant to be subjected to attachment under the present circumstances.

## ARGUMENT

### I. Plaintiff's Motion Improperly Seeks an End-Run Around Requirements Congress Imposed to Protect Trust Income

Plaintiff contends that he satisfies the requirements for attaching Defendant's trust income in this case because, *inter alia*, the trust funds are purportedly "not exempt from execution," and that the Court can fashion a "just" mechanism for attaching the funds. ECF No. 121 at 11-12, 31. Plaintiff is incorrect.[3]

---

[3] This brief focuses on the impropriety of Plaintiff's attempt to attach trust funds held by the United States at this preliminary stage, before the parties have addressed significant substantive issues. *Compare* ECF No. 121 at 17 (claiming the fee agreement "runs with the land," such that it encumbers the Allotment for a twenty-year period) *with* 25 U.S.C. § 81 (requiring Secretarial approval of any contract encumbering Indian lands for more than seven years); 25 U.S.C. § 354 (allotted land not subject to encumbrance for debts until lands conveyed in fee simple).

7
*Givens v. Oenga Jr.*            Case No. 3:21-cv-00008-HRH
United States' Amicus Brief in Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment

Case 3:21-cv-00008-HRH   Document 137   Filed 07/10/24   Page 8 of 18

As set forth above, trust funds maintained in IIM accounts are subject to extensive statutory and regulatory protections. Congress has limited how leasing income derived from Indian lands, including the Allotment, can be used to satisfy debts or claims by creditors. 25 U.S.C. § 410. Section 410 provides the Secretary with discretion to permit such funds to be used to satisfy debts, and the Secretary has exercised this discretion through regulations that establish clear parameters and procedures for encumbrance of an IIM account, *see* 25 C.F.R. §§ 115.600-620, as well as for pursuing claims against a probate estate, *see id.* §§ 15.301-305; 43 C.F.R. §§ 30.140-148.

There is no statutory or regulatory mechanism that allows third parties to seize IIM funds pending the outcome of litigation against a beneficiary. Plaintiff cannot secure an encumbrance under Interior regulations because, as he admits, ECF No. 121 at 24, he did not obtain Interior's approval prior to executing his fee contract with his clients. *See* 25 C.F.R. § 115.601(b)(2)(ii). That Plaintiff may not meet the regulatory requirements, ECF No. 121 at 24, does not mean he can "fashion" an end-run around these statutory and regulatory restrictions.

Plaintiff's attempt to equate the relief he is currently seeking with the relief at issue in *Givens v. Oenga*, No. 3:19-cv-0043-HRH (D. Alaska), should also be rejected. In *Oenga*, this Court specifically concluded that the relief plaintiff sought was "*to enforce the court's judgment . . . pertain[ing] to specific performance,*" and should not be understood as an attachment of funds held by the United States to secure money damages, so that the restrictions in *Blue Fox, Inc.* and 25 U.S.C. § 410 were not at issue.

8

*Givens v. Oenga Jr.*                                                      Case No. 3:21-cv-00008-HRH
United States' Amicus Brief in Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment

*Oenga*, 2020 WL 10319255, at *2-4 (D. Alaska Oct. 15, 2020) (emphasis added). Here, not only is there no judgment to enforce, and no order of specific performance at issue, but it is also plain that the Motion seeks to "seiz[e] property"—namely, $239,654.01 that is unquestionably held in trust by the United States—and "attach" it, allegedly as "existing debt due and owing" to Plaintiff, *in case* he prevails in the litigation. ECF No. 121 at 7, 30. The Court should reject Plaintiff's attempt to justify the extraordinary relief he seeks in the Motion by falsely equating this case with *Oenga*.

The Court should further reject Plaintiff's efforts to distinguish cases like *Law Offices of Vincent Vitale, P.C. v. Tabbytite*, 942 P.2d 1141 (Alaska 1997) and his reliance on cases such as *United States v. Equitable Trust Co. of N.Y.*, 283 U.S. 738 (1931) and *Arenas v. Preston*, 181 F.2d 62 (9th Cir. 1950) to contend that he is exempt from the limitations Congress imposed in 25 U.S.C. § 410. ECF No. 121 at 24-29.

In *Tabbytite*, the Alaska Supreme Court rejected the effort of an attorney to place a lien on assets accrued from restricted Indian lands to recover attorney's fees from a former client, concluding such lien was barred by 25 U.S.C. § 410. 942 P.2d at 1147-48. The Court's decision did not turn on the presence or absence of a fee agreement, as Plaintiff contends. ECF No. 121 at 24. Instead, the Court concluded that because the assets sought to be recovered derived from a restricted fee allotment, they were unavailable to satisfy the debt owed to the attorney. *Tabbytite*, 942 P.2d at 1147-48. The Alaska Supreme Court further rejected the notion that cases such as *Equitable Trust Co. of N.Y.* or *Arenas* controlled the analysis. *Id.* at 1148. The Court found that those cases

9
*Givens v. Oenga Jr.*                                      Case No. 3:21-cv-00008-HRH
United States' Amicus Brief in Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment
Case 3:21-cv-00008-HRH    Document 137    Filed 07/10/24    Page 10 of 18

failed to consider Section 410 and concluded that it was "not free to decide" the case based on the rationale used in those cases, because the rationale those courts employed "conflicts with the explicit command of the statute." *Id.*

Plaintiff suggests that there is some exception to Section 410's requirement for Secretarial approval of any contract encumbering Indian lands for more than seven years when the contract is for attorneys' fees that stem from representing parties in a suit against the United States. ECF No. 121 at 24. Not so. Neither *Equitable Trust Co. of N.Y.* nor *Arenas* considered Section 410 at all, so there is no support in either case that the courts fashioned some type of exception from Section 410's limitations.

At most, the courts in *Equitable Trust Co. of N.Y.* and *Arenas* may have recognized some type of implied Secretarial consent under Section 410 to facilitate the payment of reasonable fees under the factual circumstances presented. But as the *Tabbytite* court explained, "adherence to [S]ection 410 does not necessarily mean that indigent allotment holders cannot obtain effective representation," and "there is no reason to "assume that the Secretary . . . will unreasonably disapprove of reasonable fees under [S]ection 410." 942 P. 2d at 1148 n.6.

*Equitable Trust Co. of N.Y.* and *Arenas* were decided in 1931 and 1950, respectively. Today, unlike then, Interior has promulgated regulations implementing Section 410, under which Interior exercised its discretion to set parameters for how and when it could approve claims against the trust funds that Section 410 directs it to protect. By permitting probate claims and encumbrances, in certain limited circumstances, the

10
*Givens v. Oenga Jr.*                                                       Case No. 3:21-cv-00008-HRH
United States' Amicus Brief in Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment

Case 3:21-cv-00008-HRH     Document 137     Filed 07/10/24     Page 11 of 18

regulations reflect a balance between the interests of trust beneficiaries and potential creditors. These regulations circumscribe Interior's review of claims against IIM funds, and Interior reasonably disallows any disbursement from IIM accounts not specifically authorized by law. Plaintiff appears to believe that the statutory and regulatory impediments to his obtaining the specific form of relief he seeks means he can ask this Court to "fashion" it for him. But this Court is not empowered to grant relief contrary to federal statutory and regulatory laws designed to protect against the relief requested.[4] The Court should thus deny Plaintiff's Motion.

## II. Plaintiff's Motion Effectively Seeks Preliminary Injunctive Relief Without Demonstrating Entitlement to Such Extraordinary Remedy

Plaintiff's Motion does not ask the Court to seize Defendant's IIM account directly, and for good reason. Such request would plainly violate controlling law. *See* 25 U.S.C. § 410; 25 C.F.R. §§ 115.600-20; *Blue Fox, Inc.*, 525 U.S. at 259-65; *Kennerly*, 721 F.2d at 1254-58. Plaintiff instead asks the Court to compel Defendant to instruct BTFA to disburse trust funds into a court registry or similar account pending resolution of this case. ECF No. 121 at 31. For the reasons herein and below, such a "mechanism" is far from "just," and in no way demonstrates Plaintiff is entitled to the relief he seeks.

---

[4] Plaintiff further states he "reserves the right to supplement the [Motion] to attach future rent payments to Oenga." ECF No. 121 at 31 n.13. Such future attachment would be improper for the reasons set forth herein. The United States would also oppose any future relief sought against Interior, BIA, BTFA, or any other federal office or official.

11
*Givens v. Oenga Jr.*                                                      Case No. 3:21-cv-00008-HRH
United States' Amicus Brief in Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment
Case 3:21-cv-00008-HRH     Document 137     Filed 07/10/24     Page 12 of 18

Fundamentally, Plaintiff's Motion seeks to compel Defendant to take actions to alter the status quo in this case by removing funds from his IIM account and placing them in a court registry or similar account while the suit is pending. Plaintiff is thus asking for mandatory preliminary injunctive relief against Defendant. *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022) (concluding that a request "to compel Defendant to act prior to the entry of a final judgment" to alter the status quo was a mandatory preliminary injunction). A preliminary injunction of any kind is "an extraordinary and drastic remedy . . . that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Fraihat v. U.S. Immigr. and Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (internal quotations omitted; emphasis original). To succeed, the movant must show "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tip in his favor, and [4] that an injunction is in the public interest." *Id.* (quotations omitted).

"The standard for issuing a mandatory preliminary injunction is high," such relief is "'not granted unless extreme or very serious damage will result,'" and such injunctions are not "'issued in doubtful cases where the injury complained of is capable of compensation in damages.'" *Snyder*, 28 F.4th at 111 (quoting *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1980)). Even if a movant demonstrates a likelihood of success on the merits, the inquiry still requires a showing of irreparable harm. *Id.* at 112. And, significantly, financial injury does not "constitute irreparable harm if adequate

12

*Givens v. Oenga Jr.*            Case No. 3:21-cv-00008-HRH
United States' Amicus Brief in Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment

Case 3:21-cv-00008-HRH    Document 137    Filed 07/10/24    Page 13 of 18

compensatory relief will be available in the course of litigation." *Goldie's Bookstore, Inc. v. Sup. Ct. of State of Cal.*, 739 F.2d 466, 471 (9th Cir. 1984).

Plaintiff does not even attempt to satisfy these stringent requirements for mandatory preliminary injunctive relief in the Motion, nor could he. Plaintiff contends he is financially harmed because, during the pendency of this case, Defendant has not made annual payments to him. ECF No. 121 at 5. Plaintiff further asserts that in the event he ultimately succeeds in this case, it will be easier for him to collect money damages if the funds are in a court registry account. *Id.* at 4-5. Plaintiff vaguely refers to the "difficulty" in being able to collect on any judgment that might be entered, but such a speculative, unsupported, and imprecise allegation does not demonstrate that adequate relief will not "be available in the course of litigation." *Goldie's Bookstore, Inc.*, 739 F.2d at 471. At bottom, Plaintiff's contentions are claims of financial injury stemming from the mere fact that he has the burden of proving his claims before obtaining any relief. In no way does this effort satisfy the requirements for preliminary injunctive relief, *see id.*, and it certainly does not rise to the level of "extreme or serious damage" required for mandatory preliminary injunctive relief, *Snyder*, 28 F.4th at 106.

On the other hand, Defendant *will* be irreparably harmed if the Motion is granted. This is because Plaintiff is asking that Defendant be compelled to remove funds from his IIM account, which would immediately divest the funds of their trust status and the benefits attendant thereto. Plaintiff's statement that he will give Defendant the sureties the Court orders, ECF No. 121 at 31, rings hollow because, even if Defendant succeeds in

13

*Givens v. Oenga Jr.*                                Case No. 3:21-cv-00008-HRH
United States' Amicus Brief in Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment

Case 3:21-cv-00008-HRH     Document 137     Filed 07/10/24     Page 14 of 18

this case, he cannot redeposit the funds back into his IIM account. 25 C.F.R. § 115.702-03. Should the Court grant the Motion and compel the Defendant to disburse funds into the court registry account, not only would Defendant lose the protections of trust status during the pendency of this suit, but the protections could never be restored. This is flatly inconsistent with Congress's purpose in protecting such funds.

## CONCLUSION

Plaintiff is not entitled to the extraordinary relief he seeks in the Motion. No statute or regulation allows the trust funds in Defendant's IIM account to be seized pending litigation. Congress has put in place statutory requirements designed to protect income derived from the leasing of restricted Indian lands like the Allotment. Interior has furthered these protections through its regulations. The Court should reject Plaintiff's request in the Motion to circumvent these restrictions.

Moreover, the Court must reject Plaintiff's request that it "fashion" relief to compel Defendant to disburse trust funds into a court registry or similar account pending the resolution of this case. However he styles the Motion and characterizes the relief sought, Plaintiff is, in fact, asking the Court to grant him mandatory preliminary injunctive relief without demonstrating entitlement to such an extraordinary remedy.

For these reasons, *Amicus Curiae* United States respectfully requests that the Court deny Plaintiff's Motion.

DATED: July 10, 2024.

14

*Givens v. Oenga Jr.*  Case No. 3:21-cv-00008-HRH
United States' Amicus Brief in Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment
Case 3:21-cv-00008-HRH   Document 137   Filed 07/10/24   Page 15 of 18

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

/s/ *Rebecca M. Ross*
REBECCA M. ROSS, Senior Attorney
LAURA BOYER, Trial Attorney
Indian Resources Section
STACY STOLLER, Attorney
Law and Policy Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044
TEL:  (202) 616-3148 (Ross)
TEL:  (202) 353-8596 (Boyer)
TEL:  (202) 353-0132  (Stoller)
FAX:  (202) 353-1156

*Attorneys for the United States*

OF COUNSEL:
Karen Lindquist, Assistant Solicitor
Naomi Adams, Attorney-Advisor
U.S. Department of the Interior
Office of the Solicitor
Division of Indian Affairs

15

*Givens v. Oenga Jr.* Case No. 3:21-cv-00008-HRH
United States' Amicus Brief in Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment

Case 3:21-cv-00008-HRH   Document 137   Filed 07/10/24   Page 16 of 18

# CERTIFICATE OF SERVICE

I, Rebecca M. Ross, hereby certify that, on July 10, 2024, the foregoing UNITED STATES' AMICUS BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PREJUDGMENT WRIT OF ATTACHMENT will be sent electronically to the registered parties as identified on the Notice of Electronic Filing.

/s/ *Rebecca M. Ross*
REBECCA M. ROSS, Senior Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice

16

*Givens v. Oenga Jr.* Case No. 3:21-cv-00008-HRH
United States' Amicus Brief in Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment

Case 3:21-cv-00008-HRH   Document 137   Filed 07/10/24   Page 17 of 18

## CERTIFICATE OF WORD COUNT

I certify that this document complies with Alaska L. Civ. R. 7.4(a)(2) because it contains 3,803 words.

/s/ *Rebecca M. Ross*
REBECCA M. ROSS, Senior Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice

*Givens v. Oenga Jr.* Case No. 3:21-cv-00008-HRH
U.S. Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment
Case 3:21-cv-00008-HRH   Document 137   Filed 07/10/24   Page 18 of 18